DERR v MURPHY MOTOR FREIGHT LINES

Docket No. 95074. Argued December 5, 1995 (Calendar No. 1). Decided July 16, 1996.  Rehearing denied 453 Mich 1204.

George J. Derr was awarded worker's compensation for injuries suffered in the course of his employment at Murphy Motor Freight Lines. Later, Murphy Motor offered him a light-duty job, which he refused, and his benefits were terminated. The plaintiff then applied for and began receiving monthly pension benefits. The plaintiff sought review of the termination before the Bureau of Worker's Disability Compensation. Before the close of proofs, the employer declared bankruptcy and ceased operation. The magistrate found that the plaintiff had suffered a personal injury that arose out of and in the course of his employment, resulting in continuous, ongoing, and total disability, and that the employer had made a bona fide offer of favored work that was unreasonably refused, and consequently suspended benefits from the date of the refusal, but revived the benefits from the date operations ceased because the offer of light duty effectively had been withdrawn. The Worker's Compensation Appeal Board affirmed. The Court of Appeals, WEAVER, P.J., and WAHLS and TAYLOR, JJ., affirmed the WCAB's findings that a reasonable offer of employment had been made and that the plaintiff unreasonably refused it,ʹ but reversed the reinstatement of benefits, holding that the favored-work doctrine requires only that an offer of work be kept open for a reasonable time and that because the offer was open for over one and one-half years, the plaintiff was not entitled to compensation by reason of the effective withdrawal (Docket No. 136833). The plaintiff appeals.

In separate opinions, the Supreme Court held:

MCL 418.301(5); MSA 17.237(301)(5) does not require a permanent forfeiture of benefits. Remand is required to the Court of Appeals for further proceedings.

Remanded.

Justice MALLETT, joined by Justices LEVIN and CAVANAGH, stated that when an employee unreasonably refuses an offer of reasonable employment, worker's compensation benefits are to be suspended only during the period of such refusal; the purposes underlying the reasonable-employment provisions and the Worker's Disability

Compensation Act in general indicate a legislative intent to reinstate benefits when an offer of reasonable employment is withdrawn by an employer. In this case, the employer made a bona fide offer of reasonable employment that the employee unreasonably refused, but the offer was effectively withdrawn by the plant closing.

An offer of favored work is deemed to be made in good faith and bona fide only if the employee was physically capable of performing the work. Whether a job offer is for reasonable employment and whether refusal of such an offer is reasonable are questions of fact. Because the findings of fact in this case, that an offer of reasonable employment was made and that the plaintiff refused it, are supported by competent evidence, they cannot be disturbed.

The clear and unambiguous language of MCL 418.301(5)(a); MSA 17.237(301)(5)(a) generally requires reinstatement of benefits once an offer is withdrawn because entitlement to benefits is suspended only during the period of refusal. Once an offer is withdrawn, it can no longer be refused. In this case, when the employer declared bankruptcy and ceased operations, its offer of reasonable employment no longer existed, and there was no offer for the plaintiff to refuse.

The Legislature did not intend a permanent forfeiture of benefits once an employer's offer of reasonable employment is effectively withdrawn. A primary purpose of the reasonable-employment doctrine is to mitigate an employer's worker's compensation liability, and mitigation opportunities do not end with the cessation of business operations. Employers are free to arrange a position within an injured employee's physical capacity with another employer or through the Michigan Employment Security Commission. The offered job need not be in the employee's general field of employment. As long as it is within the employee's capacity to perform without the threat of harm to the employee and is within a reasonable distance from the employee's residence, it is considered a reasonable offer of employment.

In this case, because there is no longer an offer from this employer for the plaintiff to refuse and because there is no indication that the plaintiff has refused a subsequent offer of reasonable employment from another employer or from the MESC, he is entitled to reinstatement of benefits from the date of his employer's bankruptcy as long as he remains available for a reasonable-employment position. Because the defendant offered some evidence that the plaintiff may not be available for work because of his retirement, and thus his retirement remains the cause of his unavailability for work, he may not be entitled to reinstatement of

benefits. Thus, remand is required to the Court of Appeals to address issues raised on appeal but not addressed in its opinion.

Justice BOYLE, concurring in part, stated that, on the facts of this case, the favored-work doctrine does not contemplate a permanent forfeiture of benefits. The facts further indicate that the period of such refusal has not ended, although the defendant's bankruptcy did not automatically entitle the plaintiff to benefits. Remand to the Court of Appeals is required for further proceedings.

Chief Justice BRICKLEY, joined by Justice RILEY, dissenting, stated that there is no reason to award the plaintiff benefits simply because his employer went into bankruptcy. Although that employer's offer of reasonable employment is no longer available, there is no supporting evidence that the plaintiff would be willing to work at any job. He thus has failed to demonstrate that he is no longer voluntarily removed from the work force. That failure means that the statutory period of refusal is not over, and he is not entitled to the reinstatement of worker's compensation benefits. In order to once again receive benefits, he must demonstrate that he is, in good faith, no longer voluntarily removed from the work force. Because there is no evidence suggesting that the plaintiff's refusal has ended, there is no need to remand for further factual determinations.

Subsection 301(5)(a) of the Worker's Disability Compensation Act provides that, following an unreasonable refusal of a bona fide offer of reasonable employment, an employee is considered voluntarily removed from the work force and no longer entitled to benefits during the period of such refusal. The phrase "period of such refusal" refers to the employee's voluntary removal from the work force and ends only when the voluntary removal ends. The dispositive question is whether the refusal to work has ended, not whether the offer of employment is still open.

The initial burden of offering reasonable employment is on the employer; after that burden is met, the employee has the burden of not unreasonably refusing that employment. The period of such refusal must end for benefits to be reinstated, and it must be possible to determine whether it has ended. Only the employee can end the refusal, and only the employee can demonstrate that it has ended. The suspension of benefits is for the duration of the employee's unreasonable refusal to accept employment and is calculated on the basis of employee's refusal, not on any actions of the employer.

The focus on whether there can be permanent forfeiture is misplaced. The act does not preclude permanent forfeiture. However, the forfeiture in this case is not necessarily permanent. An offer of

reasonable employment could issue from another employer, and the plaintiff could end his refusal by seeking or accepting other employment. In such a case, his benefits could be reinstated.

Justice Weaver took no part in the decision of this case.

195 Mich App 333; 489 NW2d 183 (1992) remanded.

*Zamler, Mellen & Shiffman, P.C.* (by *Donald Shiffman*); *Daryl Royal*, of counsel, for the plaintiff.

*Lacey & Jones* (by *Gerald M. Marcinkoski*) for the defendants.

Amici Curiae:

*Sweeney, Sullivan, Esper & Associates, P.C.* (by *J. Timothy Esper* and *Joel W. Jonas*), for Michigan Teamsters Joint Council No. 43.

*Conklin, Benham, Ducey, Listman & Chuhran, P.C.* (by *Martin L. Critchell*), for Michigan Self-Insurers' Association.

Mallett, J. In this worker's compensation case, we must determine whether the Worker's Disability Compensation Act requires that benefits be reinstated when an offer of reasonable employment that was unreasonably refused is withdrawn by a plant closing. Because the Court of Appeals failed to give effect to the act's requirement that benefits be denied during the period of unreasonable refusal and no longer, we would reverse its holding that the plaintiff was not entitled to reinstatement of benefits and would remand to the Court of Appeals to address issues raised on appeal but not addressed in its opinion.

We also would uphold the findings of the Worker's Compensation Appeal Board that the defendant employer made a bona fide offer of reasonable

employment and that the plaintiff employee unreasonably refused the offer.

I

George Derr began working for Murphy Motor Freight Lines as a truck driver in October of 1968. His job also entailed moving freight to and from loading docks. In December of 1984, he injured his back on the job while unloading a desk weighing in excess of 250 pounds. Although he finished his shift that day, he was unable to work the following day because the pain was too great. The defendant employer placed him on medical leave, and he began receiving worker's compensation benefits. Mr. Derr attempted to return to work on January 21, 1985, but was unable to perform his job. He went back on medical leave and began treatment three times a week at an industrial clinic.

By letter dated June 11, 1985, the defendant employer offered Mr. Derr a light-duty job consisting of security and clerical duties on a midnight shift. On June 18, 1985, Mr. Derr refused the offer. He gave several reasons, including that the job was nonunion and on an undesirable shift, and that his prescribed medication made him too drowsy to perform the job safely and to safely travel to and from the job site. He also testified that he did not feel he could physically perform the job. Because he refused the offer, defendant employer terminated Mr. Derr's worker's compensation benefits effective June 18, 1985.

Approximately a year before his injury, Mr. Derr purchased a retirement home in northern Michigan and began inquiring about his retirement benefits. He testified that at that point he had only general

thoughts of retirement. He was aware that the longer he waited, the more his pension benefits would increase. The day after refusing the offer of light-duty work and being informed that his worker's compensation benefits would cease, Mr. Derr applied for pension benefits. He subsequently began receiving monthly pension benefits. Approximately three months after termination of his compensation benefits, he moved to his retirement home.

On June 28, 1985, Mr. Derr filed a petition for hearing with the Bureau of Worker's Disability Compensation. The case was heard before a magistrate. On the date set for the closing of proofs, the employer informed plaintiff's counsel that it had declared bankruptcy and had closed its operations on February 26, 1987.

The magistrate found that plaintiff had suffered a personal injury that arose out of and in the course of his employment, resulting in continuous, ongoing, and total disability. He further found that the employer had made a bona fide offer of favored work and that plaintiff unreasonably refused this offer. Consequently, the magistrate suspended weekly compensation benefits from June 18, 1985, the date that plaintiff refused the job offer. The magistrate also revived weekly compensation payments effective February 26, 1987, because of the effective withdrawal of the offer by defendant's bankruptcy. The magistrate cited *Hartsell* v *Richmond Lumber Co*, 154 Mich App 523; 398 NW2d 456 (1986), and *Steward* v *Westran Corp*, 130 Mich App 68; 343 NW2d 7 (1983), for the proposition that an unreasonable refusal of reasonable employment does not permanently deprive an employee of worker's compensation benefits, but

rather suspends the employee's benefits for the duration of the unreasonable refusal.

The Worker's Compensation Appeal Board affirmed in all aspects relevant to this appeal. Specifically, the WCAB found that defendant established by a preponderance of the evidence that it made a bona fide offer of reasonable employment and that plaintiff's reasons for refusing the offer were unreasonable. The WCAB also cited *Hartsell* in affirming reinstatement of benefits.

The Court of Appeals affirmed the WCAB's findings that defendant made a reasonable offer of employment and that plaintiff unreasonably refused it. However, the Court reversed the reinstatement of benefits. It held that the favored-work doctrine only requires an employer to keep an offer open for a reasonable time under all the circumstances. The Court reasoned that because the offer was open for over 1½ years and plaintiff gave no indication that he was interested in returning to work during this entire time, he was not once again entitled to compensation benefits by reason of the effective withdrawal of the offer due to defendant's bankruptcy. The Court of Appeals stated:

> The favored-work doctrine requires only that an employer keep open an offer for a reasonable time under all the circumstances. *Russell* v *General Motors Corp*, 172 Mich App 627; 432 NW2d 738 (1988). After that time, the company should be permitted to withdraw its offer with no fear of disadvantage. *Id.* In this case, the offer was effectively kept open for over a year and a half. During that time, no indication was given by plaintiff that he might be interested in the job. Thus, even though the company's bankruptcy effectively meant the offer was withdrawn, plaintiff was not once again entitled to compensation benefits.

> Plaintiff argues that MCL 418.301(5); MSA 17.237(301)(5)
> should be interpreted to mean that the employee's refusal
> ends when the employer either withdraws its offer or goes
> out of business. Review of the statute does not persuade us
> of the validity of this argument. [195 Mich App 333, 335-336;
> 489 NW2d 183 (1992).]

Plaintiff appealed in this Court, raising the following issues: (1) whether the magistrate, the WCAB, and the Court of Appeals erred in determining if the job offered was reasonable employment, and (2) whether his benefits should be reinstated upon the effective withdrawal of the job offer because of defendant's bankruptcy.

II

Plaintiff argues that the magistrate, the WCAB, and the Court of Appeals erred in determining that he unreasonably refused an offer of "favored work" before properly determining whether the offer was for "reasonable employment." Plaintiff's argument is actually twofold: (1) that the lower tribunals erroneously applied judicially created "favored work" principles rather than the statutory "reasonable employment" provisions, and (2) that by analyzing the reasonableness of plaintiff's refusal before determining whether the offer was for reasonable employment, the lower tribunals impermissibly shifted the burden of proof to plaintiff on certain key issues. We find no merit to either of these contentions.

A

Plaintiff points out that throughout their written opinions, the lower tribunals in this matter used the term "favored work" rather than the statutory term "reasonable employment." This, however, does not

mean that the lower tribunals employed an incorrect analysis. The Legislature partially codified the judicially created favored-work doctrine in the reasonable-employment provisions of the Worker's Disability Compensation Act. *Pulver* v *Dundee Cement Co*, 445 Mich 68, 74; 515 NW2d 728 (1994). Importantly, the favored-work doctrine and the reasonable-employment provisions call for the same analysis regarding whether an offer is for reasonable employment and whether plaintiff unreasonably refused the offer.

Reasonable employment is defined in the act as

> work that is within the employee's capacity to perform that poses no clear and proximate threat to that employee's health and safety, and that is within a reasonable distance from that employee's residence. [MCL 418.301(9); MSA 17.237(301)(9).]

Like the definition of reasonable employment, the doctrine of favored work also focused on whether an employee was physically capable of performing the job. An offer of favored work would be deemed a good-faith, bona fide offer only if it was one that the employee was physically capable of performing. *Bower* v *Whitehall Leather Co*, 412 Mich 172, 186; 312 NW2d 640 (1981); *Kolenko* v *United States Rubber Products, Inc*, 285 Mich 159, 162; 280 NW 148 (1938).

In concluding that defendant established a bona fide offer of reasonable employment and that plaintiff unreasonably refused it, the magistrate found that "plaintiff has failed to show any medical reason why he could not carry out the favored work job and in fact had never mentioned the offer of favored work to Dr. Gordon [plaintiff's evaluating physician] to secure

his opinion on whether he could perform the work or not." During the trial, medical testimony was presented indicating that the light work offered to Mr. Derr was within his physical limitations.[1]

Similarly, the WCAB stated:

> We find, as did the Magistrate in this matter, that defendant established, by a preponderance of the evidence, that it made a bona fide offer of favored work to plaintiff. We find that while plaintiff offered explanations as to why he refused to accept the favored work, they were unpersuasive, and we do not find them to be reasonable. . . .
>
> We find, through the testimony presented on the record, that the offer of favored work appeared to be within the restrictions placed on plaintiff. We note plaintiff has offered no testimony that would persuade us that the offered work would be, in any way, outside of plaintiff's restrictions. [Unpublished opinion, mailed December 11, 1990 (Decision No. 1578), p 8.]

Plaintiff argues that the factfinders refer in their written opinions to the suitability of the job when discussing the reasonableness of plaintiff's refusal, rather than when discussing whether the offer was for reasonable employment. This, however, does not constitute error because the suitability of the job is pertinent to both determinations. After reviewing the record and detailed findings of the magistrate and the

---

[1] Plaintiff's examining physician, Dr. Gordon, placed the following restrictions on plaintiff:

> I would suggest that Mr. Derr continue to restrict his activities by avoiding lifting and carrying of weights that would be in excess of 15 pounds on a frequent basis. He should also avoid frequent bending and torque movements as well as prolonged standing and sitting.

The record further indicates that the clerical and security duties required by the light-duty job were within these restrictions.

WCAB, we are convinced that the magistrate and the WCAB appropriately considered whether plaintiff was able to perform the job in determining that the offer was for reasonable employment.

Whether a job offer is for reasonable employment and whether refusal of such an offer is reasonable are questions of fact. *Pulver, supra* at 77. The findings of fact of the WCAC[2] are conclusive in the absence of fraud and will not be disturbed if supported by competent evidence in the record. *Bower* v *Whitehall Leather Co, supra* at 197; MCL 418.861; MSA 17.237(861). Because the proper standard was applied, and the findings are supported by competent evidence in the record, we would affirm them.

B

Regarding plaintiff's argument that the magistrate and the WCAB impermissibly shifted the burden of proof on critical issues from defendant to plaintiff, we find it unnecessary to evaluate the relative burdens and to determine whether they were appropriately allocated.[3] Again, our review of these factual findings

---

[2] And formerly, as in this case, the WCAB; *Pulver v Dundee Cement Co, supra* at 71.

[3] Plaintiff argues that defendant bears the burden of proving whether the offer is for reasonable employment, while plaintiff has the burden of proving whether his refusal was reasonable. The question whether plaintiff could safely drive if drowsy as the result of taking prescribed medication is an issue relevant to determining whether the offer was for reasonable employment because it relates to whether the job poses a clear and proximate threat to his health and safety and whether the job offered was "within a reasonable distance" from his residence. Thus, argues the plaintiff, while defendant should have borne the burden of proof regarding this issue, the lower tribunals considered the issue of drowsiness in determining that plaintiff's refusal was unreasonable instead of considering it in determining if the offer was reasonable. Consequently, argues plaintiff, the burden of proof regarding this issue was erroneously shifted from defendant to plaintiff.

is extremely limited in scope. Because the WCAB's findings are supported by competent evidence, they should not be disturbed.

### III

The more difficult issue presented in this appeal is whether plaintiff is entitled to reinstatement of benefits by virtue of the employer's effective withdrawal of its offer when it declared bankruptcy and closed its doors. Although the defendant offers some persuasive arguments against reinstatement of benefits, the language of the reasonable-employment provisions and the legislative intent behind these provisions foreclose a permanent forfeiture of benefits.

### A

Section 301(5)(a) of the Worker's Disability Compensation Act provides:

If disability is established pursuant to subsection (4), entitlement to weekly wage loss benefits shall be determined pursuant to this section and as follows:

(a) If an employee receives a bona fide offer of reasonable employment from the previous employer, another employer, or through the Michigan employment security commission and the employee refuses that employment without good and reasonable cause, the employee shall be considered to have voluntarily removed himself or herself from the work force and is no longer entitled to any wage

---

Even if we were to entertain plaintiff's burden of proof argument, we find it unpersuasive. The issue of drowsiness was relevant both to whether there was a reasonable offer of employment and to whether plaintiff's refusal was reasonable. It is apparent that the magistrate and the WCAB did not find plaintiff's claims of drowsiness to be particularly credible. The mere fact that the magistrate and the WCAB discussed this claim in the context of the plaintiff's refusal, rather than in the context of the offer of employment, does not necessarily mean that the burden of proof was impermissibly shifted.

loss benefits under this act *during the period of such refusal.* [MCL 418.301(5);  MSA 17.237(301)(5)  (emphasis added).]

The clear and unambiguous language generally requires reinstatement once an offer is withdrawn because entitlement to benefits is suspended only "during the period of such refusal." Once an offer is withdrawn, it can no longer be refused. When the defendant employer declared bankruptcy and shut its doors, its offer of reasonable employment no longer existed. Consequently, there was no offer for the plaintiff to refuse.

Rules of statutory construction require that when the language of a statute is clear and unambiguous it must be enforced as written. *Hiltz v Phil's Quality Market*, 417 Mich 335, 343; 337 NW2d 237 (1983).  A literal reading of the statute does not permit a permanent forfeiture of benefits.[4]

---

[4] As is the case with most "plain language" analyses, other interpretations, while perhaps less plausible, can be read into the "clear and unambiguous" statute. Here, it could be argued that the "period of such refusal" extends until the employee indicates that he is no longer refusing reasonable employment and is ready and willing to reenter the work force. Under this interpretation, if an employee unreasonably refuses an offer and the offer is later effectively withdrawn before the employee indicates a willingness to return to work, the period of refusal continues and the employee is not entitled to reinstatement of benefits.

This reading of the statute has some initial appeal, especially in the context of this case, where the offer is withdrawn because of bankruptcy and the facts, upon further development, may reveal that the plaintiff has no intention of reentering the work force. However, it does not comport with the policy reasons underlying the reasonable-employment doctrine, as discussed in part III(B).

Another possible interpretation, less plausible than that just discussed, is that an offer of reasonable employment must be kept open only for a reasonable time. If the employee fails to indicate acceptance of the offer within this reasonable time, he permanently forfeits benefits. This interpretation, which was adopted by the Court of Appeals in this case, has no basis in the statute whatsoever, and also does not comport with the

As noted time and again by this Court, "the WDCA is in derogation of the common law, and its terms should be literally construed without judicial enhancement." *Paschke v Retool Industries*, 445 Mich 502, 510-511; 519 NW2d 441 (1994); *Luyk v Hertel*, 242 Mich 445, 447; 219 NW 721 (1928). Where the statutory language is clear, courts should not add or detract from its provisions. Where ambiguity exists, the act should be liberally construed to grant, rather than to deny, benefits. *Paschke, supra* at 511; *Bower, supra* at 191.

This guiding principle, deeply rooted in our worker's compensation law, is especially pertinent here, where a literal reading of the act generally favors reinstatement of benefits and where less literal interpretations result in a permanent forfeiture of benefits. As noted by Justice BRICKLEY in *Nederhood v Cadillac Malleable Iron Co*, 445 Mich 234, 247; 518 NW2d 390 (1994):

> It would seem that a permanent forfeiture of benefits is not in accord with a liberal construction of the Worker's Disability Compensation Act.

B

Policy reasons underlying the reasonable-employment provisions of the WDCA also advise against an automatic and permanent forfeiture of benefits when an employee unreasonably refuses an offer

---

rationale behind the reasonable-employment doctrine. As noted by Justice BOYLE, concurring in part and dissenting in part in *Nederhood v Cadillac Malleable Iron Co,* 445 Mich 234, 267; 518 NW2d 390 (1994), "[t]he 'reasonable time' limitation would present employers with a windfall by turning a judicially created doctrine of mitigation into a judicially created doctrine of benefit elimination."

that is later withdrawn because of bankruptcy. A primary purpose of the reasonable-employment doctrine is to allow an employer to mitigate its worker's compensation liability by providing work within the injured employee's physical capacity. *Pulley* v *Detroit Engineering & Machine Co*, 378 Mich 418; 145 NW2d 40 (1966); *Bower, supra* at 182; *Stallworth* v *Chrysler Corp*, 144 Mich App 706, 710; 375 NW2d 797 (1985). The refusing employee's benefits are cut off during the period of refusal in order to encourage the employee to accept the offer and thus effectuate the employer's ability to mitigate. The Court of Appeals in *Hartsell* explained:

> The doctrine of favored work is anchored in mitigation principles which allow the employer to reduce its established liability to the employee where the employee unreasonably refuses favored work. However, the employee's unreasonable actions can no longer be the justification for reducing the employer's liability once the plant closes, as here, or once an offer of favored work is withdrawn. [*Id.* at 534.]

We find this rationale persuasive and agree that the purposes underlying the reasonable-employment doctrine would not be served by permanently denying benefits.

It should also be noted that an employer's mitigation opportunities do not end with cessation of its business operations. The Legislature, in enacting the reasonable-employment provisions, altered the favored-work doctrine in several significant respects. One of these changes was to expand an employer's mitigation opportunities by including within the ambit of reasonable employment a job from any source:

> If an employee receives a bona fide offer of reasonable employment *from the previous employer, another employer, or through the Michigan employment security commission* and the employee refuses that employment without good and reasonable cause, the employee shall be considered to have voluntarily removed himself or herself from the work force and is no longer entitled to any wage loss benefits under this act during the period of such refusal. [MCL 418.301(5)(a);   MSA 17.237(301)(5)(a) (emphasis added).]

Consequently, employers are free to arrange a position within an injured employee's physical capacity with another employer or through the MESC.

Further, the offered job no longer need be in the employee's general field of employment, as it did under the favored-work doctrine. As long as it is within the employee's capacity to perform, without the threat of harm to himself and within a reasonable distance from his residence, it is considered a reasonable offer of employment. MCL 418.301(9);   MSA 17.237(301)(9).[5]

The Legislature's expansion of an employer's opportunities for mitigation supports a finding that the Legislature did not intend a permanent forfeiture of benefits once an employer's offer is effectively withdrawn.

The defendant argues that it has acted in good faith, that the plaintiff has not, and that this Court

---

[5] Section 301(9) provides:

"Reasonable employment," as used in this section, means work that is within the employee's capacity to perform that poses no clear and proximate threat to that employee's health and safety, and that is within a reasonable distance from that employee's residence. The employee's capacity to perform shall not be limited to jobs and work suitable to his or her qualifications and training.

should weigh the reasonableness of the parties'
actions in determining if benefits should be
reinstated. While reasonableness and good faith come
into play in determining whether there has been a
bona fide offer of reasonable employment and
whether there was a reasonable refusal, no amount of
good or bad faith, by either of the parties, can justify
judicial redrafting of the statute.

Nor can this Court engraft onto the statute a
requirement that the employee communicate his
desire to reenter the work force or otherwise indicate
a willingness to return to work once he has unreason-
ably refused an offer of reasonable employment.[6] This

---

[6] Defendant employer forcefully argues that while it has acted in good
faith in extending its offer and in keeping it open for over 1½ years, the
plaintiff has not acted in good faith. Instead, the day after refusing the
offer, plaintiff applied for retirement benefits and subsequently moved to
his retirement home in northern Michigan. Mr. Derr, argues defendant, has
chosen to retire and has no intention of returning to work. But for the for-
tuitous withdrawal of its offer because of bankruptcy, Mr. Derr would
never have reapplied for benefits.

While defendant's argument is compelling, it must be remembered that
in many cases, worker's compensation benefits may be subject to coordi-
nation with retirement pension payments under the act. MCL 418.354;
MSA 17.237(354). Further, as noted earlier, the employer has other oppor-
tunities for mitigation.

It must also be remembered that retirement from one employer does
not necessarily imply an intention on the part of an individual to perma-
nently withdraw from gainful employment. Many individuals, upon becom-
ing vested under a retirement plan, choose to retire and begin receiving
their earned benefits while at the same time obtaining another job.

Finally, given that defendant suspended his compensation benefits, Mr.
Derr's application for his pension may have been motivated by economic
necessity, rather than a desire to permanently retire. The economic neces-
sity of a claimant securing a means of support pending resolution of a dis-
ability claim was noted by this Court in *Paschke, supra* at 517, and in
*Bower, supra* at 193.

> [I]t is important to recognize that if the employer does not pay
> compensation voluntarily, the employee may be without any means
> of support until an award of benefits is made by the referee at the
> hearing. [*Id.*]

is simply not required by the statute. Instead, the WDCA requires that the Bureau of Worker's Disability Compensation and the defendant employer be notified if the plaintiff has refused another bona fide offer of employment. MCL 418.301(8); MSA 17.237(301)(8). There is no evidence in the record indicating either that plaintiff refused job offers from the MESC or that defendant solicited job offers from other employers.

For all the reasons stated above, we conclude that § 301(5)(a) of the WDCA means exactly what it says: Benefits that are suspended because of an employee's unreasonable refusal of an offer of reasonable employment are suspended only during the period of such refusal. Once an offer is withdrawn and it is no longer available for the employee to accept, benefits must be reinstated as long as the employee is available for work unless and until another reasonable offer is unreasonably refused by the employee.

Here, the offer of reasonable employment was effectively withdrawn when the defendant employer declared bankruptcy and closed its doors on February 26, 1987. Because there is no longer an offer for plaintiff to refuse from this employer and because there is no indication in the record that plaintiff has refused a subsequent offer of reasonable employment from another employer or from the MESC, plaintiff is entitled to reinstatement of benefits, effective February 26, 1987, as long as he remains available for a reasonable-employment position.

---

We do recognize, however, that if Mr. Derr has permanently removed himself from the job market, he may no longer be available for a reasonable-employment position. Consequently, he may not be entitled to full reinstatement of benefits.

Because the defendant has offered some evidence that the plaintiff may not be available for work because of his retirement, this case may present a situation different than the temporary removal from the workplace that is addressed by § 301(5). While this section generally requires reinstatement of benefits when an employer withdraws an offer of reasonable employment, if Mr. Derr has permanently retired, and thus his retirement remains the cause of his unavailability for work, then he may not be entitled to reinstatement of benefits. We, therefore, would remand to the Court of Appeals to address issues raised on appeal, but not addressed in its opinion.

IV

In summary, because there is competent evidence on the record for the WCAB's determination that the defendant employer made a bona fide offer of reasonable employment and that the plaintiff employee unreasonably refused this offer, we would affirm that part of the Court of Appeals opinion upholding these factual findings by the WCAB.

However, because the WDCA provides that when an employee unreasonably refuses an offer, benefits are to be suspended only during the period of such refusal, and because the purposes underlying the reasonable-employment provisions and the WDCA in general indicate a legislative intent to reinstate benefits when an offer of reasonable employment is withdrawn by the employer, we would reverse that portion of the Court of Appeals decision that reversed the WCAB's reinstatement of benefits from the date of defendant employer's bankruptcy.

LEVIN and CAVANAGH, JJ., concurred with MALLETT, J.

Boyle, J. (*concurring in part*). On these facts, the favored-work doctrine, codified in MCL 418.301(5)(a); MSA 17.237(301)(5)(a), does not contemplate a permanent forfeiture of benefits. However, the facts of this case do indicate that "the period of such refusal" has not ended. *Id.* Therefore, while I disagree with the Court of Appeals conclusion that the forfeiture of benefits is permanent, I agree with Chief Justice Brickley that defendant's bankruptcy did not automatically entitle plaintiff to benefits. I would remand to the Court of Appeals for further proceedings consistent with my opinion.

Brickley, C.J. (*dissenting*). I agree with the lead opinion's decision to uphold the administrative findings "that the defendant employer made a bona fide offer of reasonable employment and that the plaintiff employee unreasonably refused the offer." *Ante* at 378-379. However, because I disagree with the lead opinion's conclusion that the plaintiff may now be entitled to the reinstatement of his worker's compensation benefits, I respectfully dissent.

I

I disagree with part III of the lead opinion, where it concludes that the WDCA compels the reinstatement of the plaintiff's benefits if he "remains available for a reasonable-employment position." *Id.* at 392. I also disagree with the analysis contained in the lead opinion, which focuses on the termination of the offer, for any reason, as the key inquiry in whether the plaintiff is entitled to benefits. Although the lead opinion contains the brief conclusion that the case should be remanded for a factual determination whether the plaintiff is available to work, its analysis centers on

the actions of the employer, not the employee. Where it does look to the employee, it queries into the employee's "availability," where the inquiry should be the employee's refusal.

I agree with the lead opinion that the applicable statute is subsection 301(5)(a) of that act. In relevant part, that statute provides that, following an unreasonable refusal of a bona fide offer of reasonable employment,

> the employee shall be considered to have voluntarily removed himself or herself from the work force and is no longer entitled to any wage loss benefits under this act during the period of such refusal. [MCL 418.301(5)(a); MSA 17.237(301)(5)(a).]

The lead opinion concludes that "the period of such refusal" may end when the offer of employment is withdrawn for any reason, including the employer's bankruptcy. I dissent because the phrase "period of such refusal" as used in the WDCA refers to the employee's voluntary removal from the work force. Accordingly, that period ends only when the voluntary removal ends.[1]

The lead opinion arrives at the conclusion that "a literal reading of the act generally favors reinstatement of benefits . . . ." *Ante* at 388. This statement is based on its analysis of why its reading is the preferred one. *Id.* at 387, n 4. Thus, rather than actually resting on the language of the statute, the lead opinion's interpretation is grounded in the fact that it does not see the other readings of the statute as "com-

---

[1] The question whether an offer must be kept open for a reasonable amount of time is beyond the scope of the facts before us.

port[ing] with the policy reasons underlying the reasonable-employment doctrine . . . ." *Id.* at 387, n 4. The lead opinion's analysis fails to adequately deal with the language of the statute. There is nothing in that language that equates the phrase "period of such refusal" with an inquiry into whether the offer is still open.

The lead opinion's assertion that benefits must be reinstated when the offer is withdrawn does not follow from the plain language of the statute. To mandate that result, the statute would need to contain a statement that "the employee is not entitled to benefits during the period the offer is open," or similar language. Under the plain language of the act, the dispositive question is whether the refusal to work has ended, not whether the offer of employment is still open. In the language used by the Legislature, the "period of such refusal" refers to the employee's voluntary absence from the work force. The plain meaning of this statement is that the employee must end that voluntary absence in order to be entitled to the reinstatement of benefits.

The initial burden of offering reasonable employment is on the employer; after that burden is met, the employee has the burden of not unreasonably refusing that employment. Similarly, the burden of ending the voluntary removal caused by the unreasonable refusal must fall on the employee. The majority characterizes the requirement that an employee indicate a willingness to return to work as judicial engrafting not required by the statute. However, this requirement is simply common sense. The "period of such refusal" must end for benefits to be reinstated, and it must be possible to determine whether it has ended.

Only the employee can end the employee's refusal, and only the employee can demonstrate that it has ended. As I stated in *Nederhood v Cadillac Malleable Iron Co*, 445 Mich 234, 250; 518 NW2d 390 (1994),

> We conclude then that an employee who has ceased to perform existing favored work should establish a good-faith willingness to accept or resume favored work that remains available in order to restore eligibility for benefits.

We must avoid an absurd construction of the statute, such as requiring an employer to divine when an employee's unreasonable refusal has ended.

The courts are directed to consider several factors, where relevant, in determining whether an employee's initial refusal of reasonable employment is for good and reasonable cause.

> Those factors may include: (1) the timing of the offer, (2) if the employee has moved, the reasons for moving,[12] (3) the diligence of the employee in trying to return to work, (4) whether the employee has actually returned to work with some other employer and, (5) whether the effort, risk, sacrifice or expense is such that a reasonable person would not accept the offer.

> ---
> [12] An attempt to avoid accepting a bona fide offer of reasonable employment by moving would never constitute good and reasonable cause.
> ---

> [*Pulver v Dundee Cement Co*, 445 Mich 68, 81; 515 NW2d 728 (1994).]

I would apply a similar test for determining whether an employee is prolonging an unreasonable and voluntary removal from the work force. In the instant case, the plaintiff applied for his pension benefits the day after refusing the defendant's offer of reasonable

employment. The plaintiff then moved to northern Michigan to live in a home he had purchased for his retirement a year before his injury. He has never again attempted to return to work with the defendant or any other employer. No evidence supports the conclusion that, were the defendant solvent, the plaintiff would have accepted its offer of employment. I therefore conclude that the defendant's bankruptcy is not a cause in fact of the plaintiff's continuing removal from the work force. Of course, nothing prevents the plaintiff from ending his period of refusal and thereby obtaining the reinstatement of his benefits.

The lead opinion also asserts that a liberal reading of the act favors the reinstatement of benefits. This undercuts the lead opinion's assertion that the plain language of the statute mandates its conclusion because statutory construction comes into play only when there is ambiguity in a statute. I also believe that the plain language of the statute mandates the result, but I reach a different result than the majority. There is no language in the statute suggesting that the "period of such refusal" is to be equated with the amount of time an offer is held open for a disabled employee. This Court should not attempt to create ambiguity where none exists. As we stated in *Nederhood*, the "only plausible interpretation" of the statute is that the suspension of benefits is "for the duration of the employee's unreasonable refusal to accept employment." 445 Mich 248. Thus, the period of refusal is calculated on the basis of the employee's refusal, not on any actions of the employer. There is no language supporting a competing interpretation that the period of refusal is to be equated with the duration of the offer.

Although I would not reach the stage of statutory construction, I note that the lead opinion's position is not mandated by the principle that the WDCA should be liberally construed to grant rather than deny benefits when possible. This is not a case in which benefits should be granted. The majority cites to *Nederhood*, stating:

> It would seem that a permanent forfeiture of benefits is not in accord with a liberal construction of the Worker's Disability Compensation Act. [445 Mich 247.]

That statement was made in a case in which this Court was required to interpret the statute to determine whether a permanent forfeiture was appropriate in order to support our decision to suspend benefits temporarily. Because the language of the statute mandated that conclusion, there was no need to construe the statute, and the statement cited is dicta. It should not be read as a statement that a permanent forfeiture of benefits can never occur, only that forfeitures are disfavored. Further, this focus on whether there can be a permanent forfeiture is misplaced. At issue is whether the plaintiff is currently entitled to benefits. Because an offer of reasonable employment can issue from another employer, the plaintiff can end his refusal by seeking or accepting other employment. If that were to happen, his benefits could be reinstated. Thus, the forfeiture is not necessarily permanent.

Moreover, the act does not preclude a permanent forfeiture. This Court's holding in *Nederhood* was that the voluntary cessation of favored work per se does not result in a permanent forfeiture of benefits. However, this Court has held that a permanent forfeiture of benefits may result from "discharges based on

moral turpitude." 445 Mich at 242, n 7. This Court thus did not foreclose the possibility of a permanent forfeiture resulting from something more than the initial cessation of work. This is such a case, where the plaintiff's continued refusal to work serves to cut off his entitlement to benefits. Although the act should be construed liberally, it should not be given a forced construction to grant benefits in a situation not intended by the Legislature. The statutory language does not mandate or support the lead opinion's conclusion.

II

Perhaps because the language of the statute does not support its decision, the lead opinion focuses on the policy reasons underlying the WDCA as support for the proposition that the plaintiff may be entitled to benefits. I would decide the case on the basis of the language of the statute and accordingly would not reach the policy considerations. However, I will address those considerations in order to express my disagreement with the conclusion in the lead opinion that public policy favors the award of benefits in this case.

The WDCA has the dual purposes of mitigation and rehabilitation. *Bower* v *Whitehall Leather Co,* 412 Mich 172, 182; 312 NW2d 640 (1981).

> The primary purpose of the [favored-work] doctrine is that of mitigation. It allows an employer to reduce or completely eliminate compensation payments by providing work within the injured employee's physical capacity. At the same time, it encourages the employee to return to productive employment rather than to remain idle, thus also serving a rehabilitative function.

Specifically, the purpose of mitigation is served by permitting an employer to provide favored work to a disabled employee, rather than paying worker's compensation benefits and paying another worker to fill the favored-work position. The purpose of rehabilitation reflects a legislative decision that it is better for a disabled employee to return to work, when possible, than simply to collect benefits. Cutting off benefits gives the employee a financial incentive to accept an offer of reasonable employment. Furthering the goals of mitigation and rehabilitation requires the continued suspension of the plaintiff's benefits.

The lead opinion asserts that when the offer is no longer available for acceptance, denying a disabled employee benefits works no further practical effect in encouraging that employee to accept employment. Thus, the lead opinion concludes that the continued denial of benefits does not further the purpose of rehabilitation. However, the rehabilitative purpose is not furthered by awarding benefits to recalcitrant employees. In fact, rehabilitation is hampered by the rule announced by the lead opinion, because it encourages employees to refuse to work. The lead opinion gives disabled employees a motive to refuse reasonable employment, confident that benefits will be awarded as soon as the employer fills the position with another worker and the offer is no longer open to the disabled employee. Although this is not the result in the instant case, because the employer is no longer in business, it is the inevitable consequence of the lead opinion's holding that a withdrawal of the offer for any reason entitles the employee to reinstatement of benefits. This circumvents the reha-

bilitative purpose of the act by rewarding the failure to accept reasonable employment.

The lead opinion stresses that an employer who is no longer in business can still attempt to mitigate damages by "arrang[ing] a position within an injured employee's physical capacity with another employer or through the MESC." *Ante* at 390. Thus, the purpose of mitigation can still be furthered. However, the language of the act does not contemplate that the employer is to arrange the work with another employer; rather, it merely states that an employee is obligated not to unreasonably refuse "[i]f an employee receives a bona fide offer of reasonable employment from the previous employer, another employer, or through the Michigan employment security commission. . . ." MCL 418.301(5)(a); MSA 17.237(301)(5)(a). The lead opinion thus attempts to impose a burden on the employer beyond that imposed by the statute by making the employer responsible for finding and offering a job that it has no reason to think the employee will accept.

The rule announced by the lead opinion also frustrates the employer's ability to mitigate damages. Because the lead opinion would award benefits once an offer is withdrawn for any reason, an employer may be forced to bear the double burden of paying benefits to a disabled employee who refuses work and paying wages to the worker used to fill the position originally offered to the disabled employee. The risk of this is heightened because an offer of reasonable employment must be for a specific job, not merely a statement that something will be found. *Kolenko v United States Rubber Products, Inc,* 285 Mich 159; 280 NW 148 (1938). An offer of reasonable work is

likely to be for a position that the employer needs to fill. The lead opinion stymies the employer's ability to fill that position, and in so doing frustrates the mitigation purpose of the act.

The lead opinion also takes issue with the defendant's argument that the good faith of the parties should be taken into account in determining the entitlement to benefits. However, the statute states that a refusal of employment "without good and reasonable cause" is considered a voluntary removal from the work force. As stated above, that voluntary removal is what must end in order for the "period of such refusal" to be over. Thus, the parties' good faith is extremely relevant in determining whether the refusal is ongoing or ended. Further, this Court has previously recognized that "the actions of both the employer and the employee must be judged against standards of good faith and reasonableness," in determining whether there has been a bona fide offer and whether the refusal was reasonable. *Pulver* at 77. Those duties of good faith are no less important in determining whether the refusal is over so that the employee is entitled to the reinstatement of benefits. Under this standard, the plaintiff is not so entitled. As the lead opinion notes, his initial refusal of the work was unreasonable. That unreasonable refusal is not over.[2]

---

[2] The lead opinion argues that the plaintiff's retirement does not necessarily imply an intention to permanently withdraw from the work force, and that it may have been economically necessary for him to begin drawing his pension. *Ante* at 391, n 6. Although I recognize the truth of this as a general proposition, it does not overcome the fact that the plaintiff in this case failed to act in good faith. He never attempted to perform the work offered, and there is no evidence suggesting that he would return to the work force to take a different job. Because he could be earning wages, it was not necessary for him to take his pension. Thus, the fact

CONCLUSION

There is no reason to award the plaintiff benefits simply because his employer went into bankruptcy. Although that employer's offer of reasonable employment is no longer available, there is no supporting evidence that the plaintiff would be willing to work at any job. He thus has failed to demonstrate that he is no longer voluntarily removed from the work force. That failure means that the statutory period of refusal is not over, and he is not entitled to the reinstatement of worker's compensation benefits. In order to once again receive benefits, the plaintiff must demonstrate that he is, in good faith, no longer voluntarily removed from the work force. I would uphold the Court of Appeals result, but for the reasons stated in this opinion. Because there is no evidence suggesting that the plaintiff's refusal has ended, there is no need to remand for further factual determinations.

RILEY, J., concurred with BRICKLEY, C.J.

WEAVER, J., took no part in the decision of this case.

---

that he did so supports the conclusion that he has no intention of returning to work.