KURZ v MICHIGAN WHEEL CORPORATION

Docket No. 208994. Submitted June 2, 1999, at Lansing. Decided July 9, 1999, at 9:00 A.M. Leave to appeal sought.

Timothy D. Kurz and Gary Sperry, employees of Michigan Wheel Corporation who sustained work-related injuries, returned to light-duty work and received worker's compensation benefits for wage loss pursuant to subsection 301(5)(b) of the Worker's Disability Compensation Act, MCL 418.301(5)(b); MSA 17.237(301)(5)(b), which provides for benefits set at a percentage of the difference between an injured employee's preinjury weekly wage and postinjury weekly wage. Following a renegotiation of the collective bargaining agreement between Michigan Wheel and its employees, bonuses and profit-sharing payments to employees were eliminated because of changed economic conditions. The bonuses and profit-sharing payments had been included in Kurz' and Sperry's preinjury weekly wages for purposes of computing their worker's compensation benefits for wage loss. Michigan Wheel and its worker's compensation insurer, National Union Fire Insurance Company, reduced Kurz' and Sperry's worker's compensation benefits for wage loss by basing the benefits on preinjury weekly wages from which the eliminated bonuses and profit-sharing payments were deducted. Worker's compensation magistrates and the Worker's Compensation Appellate Commission upheld the reduction in wage-loss benefits. Kurz and Sperry appealed by leave granted.

The Court of Appeals *held*:

Subsection 301(5)(b) sets wage-loss benefits at eighty percent of the difference between the injured employee's after-tax weekly wage before the date of injury and the after-tax weekly wage the injured employee is able to earn after the date of injury, but not more than the maximum weekly rate of compensation as determined under § 355, MCL 418.355; MSA 17.237(355). Nothing in subsection 301(5)(b) requires that postinjury economic conditions be taken into account when calculating wage-loss benefits. Had the Legislature intended that wage-loss benefits be adjusted for postinjury changes in economic conditions, it would have expressly provided so.

Reversed and remanded for further proceedings.

WORKER'S COMPENSATION — POSTINJURY EMPLOYMENT — WAGE-LOSS BENEFITS.
    An employee who sustains a disabling work-related injury and there-
    after resumes employment for which the employee is paid less than
    what the employee earned before the injury is entitled to weekly
    wage-loss benefits equal to eighty percent of the difference
    between the injured employee's after-tax weekly wage before the
    date of the injury and the after-tax weekly wage the injured
    employee is able to earn after the date of the injury, but no more
    than the maximum weekly rate of compensation as determined
    under § 355 of the worker's compensation act; when calculating
    wage-loss benefits, the preinjury after-tax weekly wage amount is
    not subject to adjustment for wage reduction attributable to
    changed economic conditions, e.g., the elimination of bonuses and
    profit-sharing payments (MCL 418.301[5][b]; MSA 17.237[301][5][b]).

*Pinsky, Smith, Fayette & Hulswit* (by *Edward M. Smith* and *Pamela K. Bratt*), for the plaintiffs.

*Faulkner & Williams, P.C.* (by *Robert M. Faulkner*), for the defendants.

Before: MARKEY, P.J., and MCDONALD and FITZGERALD, JJ.

PER CURIAM. Plaintiffs Timothy D. Kurz and Gary Sperry appeal by leave granted from the decision of the Worker's Compensation Appellate Commission affirming with modifications the magistrates' decisions holding that plaintiffs are not entitled to have their benefits calculated on the basis of their preinjury wages where components of those wages have been eliminated as a result of economic conditions and collective bargaining. We reverse and remand.

Plaintiffs are two of fourteen employees of defendant Michigan Wheel Corporation who returned to light-duty work after being injured on the job. Plaintiff Kurz was injured on August 3, 1989, while plaintiff Sperry was injured on March 15, 1990. Plaintiffs

returned to work with restrictions and were receiving benefits under MCL 418.301(5)(b); MSA 17.237(301)(5)(b).

When the automotive industry took a downturn during the early 1990s, the union's collective bargaining agreement was renegotiated and certain benefits were eliminated or modified. Defendants recalculated plaintiffs' benefits on the basis of the new collective bargaining agreement, which did not include the bonuses and profit-sharing payments that had constituted part of plaintiffs' compensation before they were injured. Defendants then reduced plaintiffs' benefits accordingly, and in some cases sought recoupment of alleged overpayments. In June 1993, defendants filed notices of dispute in each of the cases, arguing that plaintiffs were not entitled to receive benefits under subsection 301(5)(b) based on calculations that included the discontinued bonus and profit-sharing plans. All fourteen cases were assigned to one of two magistrates. Because the common issue in each of the cases was the reduction of benefits based on changed economic conditions, the parties agreed that one plaintiff would be chosen as a representative case before each magistrate.

For the purposes of the hearings, defendants stipulated that plaintiffs were partially disabled, but argued that plaintiffs were not entitled to have the former bonus and profit-sharing income included in the calculation because the reduction in income was attributable to economic conditions, not plaintiffs' injuries. Plaintiffs, on the other hand, stipulated that the changes in benefits were the result of economic conditions, but argued that, under subsection 301(5)(b), benefits had to be calculated on the basis

of the wages they were receiving at the time they were injured.

Both magistrates concluded that the loss of the bonus and profit-sharing income was not compensable because it was not attributable to plaintiffs' injuries. The WCAC agreed, relying on the language in subsection 301(5)(b) regarding the wages that the injured employee "is able to earn after the date of injury" to support its conclusion that "requiring payment of benefits based on this loss would be to impose on the consuming public a loss in no way attributable to the work related injuries. This is contrary to the fundamental policy of the compensation act." The WCAC held that benefits should be calculated by comparing "the full weekly wage at the time of injury with wages the employee is able to earn thereafter taking into account that any diminution of wages must be related to injury and not generalized economic conditions." The commission distinguished the case law cited by plaintiffs, characterizing the situation in the instant case as one in which "the employee returned to work and suffered a loss in wages in the new employment exclusively due to generalized economic conditions." The commission declined to address plaintiffs' constitutional arguments and denied plaintiffs' request for penalties.

This Court's review of worker's compensation cases is limited to whether the WCAC applied the correct legal standard and whether there is any competent evidence to support its factual findings. MCL 418.861a(14); MSA 17.237(861a)(14); *Goff v Bil-Mar Foods, Inc (After Remand)*, 454 Mich 507, 512; 563 NW2d 214 (1997); *Michales v Morton Salt Co*, 450 Mich 479, 485; 538 NW2d 11 (1995). A decision of the

WCAC may be reversed if the commission operated within the wrong legal framework, if its decision was based on erroneous legal reasoning, or if it failed to correctly apply the law. *Jones-Jennings v Hutzel Hosp (On Remand)*, 223 Mich App 94, 105; 565 NW2d 680 (1997).

MCL 418.301(5)(b); MSA 17.237(301)(5)(b) provides as follows:

> If an [injured] employee is employed and the average weekly wage of the employee is less than that which the employee received before the date of injury, the employee shall receive weekly benefits under this act equal to 80% of the difference between the injured employee's after-tax weekly wage before the date of injury and the after-tax weekly wage which the injured employee is able to earn after the date of injury, but not more than the maximum weekly rate of compensation, as determined under section 355.

Subsection 301(5)(b) spells out a fairly simple formula for determining wage-loss compensation when an injured employee returns to work at a lower wage. The employee is entitled to eighty percent of the difference between his current after-tax wages and his after-tax wages at the time of his injury, limited by the maximum weekly rate allowable under MCL 418.355; MSA 17.237(355). Thus, the only relevant questions are (1) what was the employee's actual income at the time of the injury and (2) what is the employee's actual income now? There is no language in this section requiring that current generalized economic conditions be taken into account in the calculation. Certainly, had the Legislature intended that wage-loss benefits be adjusted in light of postinjury

economic events, it could have included language to that effect.

In fact, the Legislature did consider postinjury adjustments to benefits when it enacted MCL 418.356; MSA 17.237(356), which allows the injured employee to petition for a one-time increase in benefits when the employee has been continuously disabled for two years and can demonstrate that "by virtue of the employee's age, education, training, experience, or other documented evidence which would fairly reflect the employee's earning capacity, the employee's earnings would have been expected to increase." This is the only provision in the worker's compensation act in which the amount of money an employee *would have been making* if not for the injury may be taken into account.[1] There is no comparable provision permitting an employer to seek a reduction in benefits upon a showing that the employee would have been making less money but for the injury. "Where the statutory language is clear, courts should not add or detract from its provisions." *Derr v Murphy Motor Freight Lines*, 452 Mich 375, 388; 550 NW2d 759 (1996).

The WCAC relied on the phrase "wages which the injured employee is able to earn after the date of injury" as support for its conclusion that only the portion of the postinjury wages that were reduced by

---

[1] In *Matney v Southfield Bowl*, 458 Mich 851 (1998), which affirmed in part and reversed in part *Matney v Southfield Bowl*, 218 Mich App 475; 554 NW2d 356 (1996), our Supreme Court expressly disavowed this Court's conclusion that extrinsic economic forces are alone sufficient to justify a wage-loss benefits *increase* under § 356. Therefore, the corollary would appear to be that extrinsic economic conditions are insufficient to justify a wage-loss benefit *decrease*, in this case under subsection 301(5)(b).

reason of the injury were compensable, citing *Sobotka v Chrysler Corp (After Remand)*, 447 Mich 1; 523 NW2d 454 (1994). However, the Court in *Sobotka* specifically rejected any calculation that included reference to an employee's "theoretical ability to exercise residual [wage-earning] capacity," i.e., what the employee would have been earning but for the injury. *Id.* at 29; see also *McKissack v Comprehensive Health Services of Detroit*, 447 Mich 57, 70-71; 523 NW2d 444 (1994). The Court relied in part on its previous decision in *Roxbury v Weidman Lumber Co*, 268 Mich 596, 599; 256 NW 560 (1934), in which it concluded that the worker's compensation statute, "in designating the wage at the time of injury and constituting such the basic figure, permits no consideration of a general wage decrease." In this case, concessions in a collective bargaining agreement made necessary by difficult economic conditions within the automotive industry come within the concept and definition of a "general wage decrease."

Although defendants argue that reliance on the *Roxbury* decision is questionable because it is an older case, its vitality was reaffirmed by the Supreme Court in *Sobotka, supra*. Moreover, the language that it construed remains part of the statute. The Legislature is charged with knowledge of appellate court statutory interpretations, and reenactment of a statute following judicial construction constitutes tacit approval of that construction. *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 505-506; 475 NW2d 704 (1991); *Smith v Detroit*, 388 Mich 637, 650; 202 NW2d 300 (1972).

Furthermore, it is well established that courts should avoid any construction of a statute that would

produce an absurd or unjust result. *McAuley v General Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998). In this case, the WCAC's construction of subsection 301(5)(b) would penalize partially disabled workers who returned to work by making their benefits subject to reduction, while totally disabled workers would continue to have their benefits calculated on the basis of their preinjury wages. It makes little sense to encourage an employee to return to work by conditioning the receipt of benefits on the acceptance of reasonable employment, but then reduce those benefits because the employee accepted such employment. See *Derr, supra* at 389.

Although the WCAC's decision was apparently motivated in part by the commission's concern that plaintiffs are receiving eighty percent of the value of benefits not currently enjoyed by uninjured employees, this concern is an insufficient basis for disregarding the plain language of the statute. Furthermore, because wages generally rise over time as a result of inflation and other economic factors, an injured employee is far more likely to progressively fall behind his uninjured co-workers in terms of income because his benefits will be calculated on the basis of the wages that were paid at some point in the past. Consequently, we hold that the WCAC misinterpreted subsection 301(5)(b) as permitting reductions in benefits paid to partially disabled workers based on general wage decreases.

Plaintiffs also contend that the WCAC's factual finding that their wage losses were solely the result of the elimination of the bonus and profit-sharing programs was not supported by the record. As previously noted, the commission's factual findings must be

affirmed if they are supported by any evidence in the record. MCL 418.861a(14);   MSA 17.237(861a)(14); *Goff, supra* at 512; *Michales, supra* at 485. In this case, plaintiffs stipulated for purposes of the hearings that the wage losses at issue, i.e., the elimination of bonus program and profit-sharing plans, were a result of general economic conditions. Therefore, the WCAC's finding to this effect was not in error.

We decline to address the other issues raised by plaintiffs because they involve questions that were not decided by the commission and that have been rendered superfluous in view of our disposition of the first issue in this case. The decision of the commission is reversed, and the case is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.