**KAISER**

v.

**MINNEAPOLIS, ST. P., S. S. M. R. CO.**

**No. 7381.**

Supreme Court of North Dakota.

Dec. 23, 1953.

W. J. Austin, Bismarck, for plaintiff and respondent.

Kelsch & Scanlon, Mandan, for defendant and appellant.

SATHRE, Judge.

This action arose out of a collision between an automobile owned and operated by the husband of the plaintiff and the defendant's freight train where its tracks cross U. S. Highway No. 10 immediately east of 24th Street in the City of Bismarck. The railroad of the defendant involved in the collision runs in a northwesterly and southeasterly direction and crosses U. S. Highway No. 10 at 24th Street near the east edge of the City of Bismarck. The train which collided with plaintiff's car originated at Hankinson, North Dakota, traveled in a northwesterly direction and entered Bismarck from the southeast.

For a first cause of action the complaint alleges that on September 7th shortly before 8 o'clock in the evening the plaintiff and her husband, John Kaiser and their four small children were driving their 1938 Chevrolet Automobile in a careful, prudent and lawful manner in an easterly direction on U. S. Highway No. 10, Bismarck, North Dakota, at a point where said highway crosses defendant's railroad tracks at 24th Street east of the City of Bismarck, North Dakota; that as plaintiff reached said railroad crossing the defendant ran one of its locomotives with a train of cars attached across said highway at said crossing at a high and negligent rate of speed without warning of any kind and without posting a watchman or without maintaining sufficient or proper warning signals or safety devices at the approaches to said crossing, and that by reason of said negligent acts of the defendant plaintiff's car collided with defendant's train and was completely wrecked and demolished; that said collision was proximately caused by the defendant's acts of negligence and that by reason thereof plaintiff was unable to see or hear said locomotive until it was too late to avoid such collision; and that before the collision said automobile was worth $1000 and that after the collision it was practically worthless; that her husband assigned to her, the plaintiff, his cause of action against the defendant for the damages to his said automobile.

For her second cause of action the plaintiff alleges that as a result of the collision she was thrown violently against the dash board of the automobile and sustained lacerations, bruises and injuries, and suffered great physical pain and mental anguish and will never again be able to carry on her life as before or to do the heavy work to which she had been accustomed, and which is necessary to a livelihood, all to her damage in the sum of $1500. She further alleges that she will be obliged to spend large sums of money for medical attention and hospital care all to her damage in the additional sum of $450.

The defendant demurred to plaintiff's first cause upon the grounds that plaintiff was not the real party in interest, and that it sounded in tort and was not assignable. The trial court overruled the demurrer and defendant answered admitting its corporate existence and that a collision occurred on September 7th between the automobile of plaintiff's husband and defendant's train, but denied specifically any negligence on its part and alleges that the damages, if any, sustained by the plaintiff and her husband were proximately caused by their contributory negligence and their failure to exercise due care and caution for their own safety. Likewise in its answer to plaintiff's second cause of action defendant admitted that the collision occurred on September 7th as alleged in the complaint, but denied specifically any negligence on its part in the operation of its train, and alleged that the damages, if any sustained by the plaintiff and her husband were proximately caused by their contributory negligence and failure to exercise due care for their own safety.

The case was tried to the court and a jury and the jury returned a verdict for the plaintiff in the sum of $100 in the first cause of action and the sum of $401.66 in the second cause of action. At the close of the entire case the defendant made a motion for a directed verdict in its favor on the grounds that the evidence was insufficient to establish a cause of action against it. The motion was denied. Judgment was entered

upon the verdict and the defendant appealed from the judgment.

Defendant assigns numerous errors, all of which may be considered under two propositions:

1. That the plaintiff's first cause of action was based upon and sounds in tort and was not assignable as a matter of law, and that the plaintiff was not the real party in interest.

2. (a) That the evidence was insufficient to establish any negligence on the part of the defendant; and

(b) That it is established by the evidence that the plaintiff and her husband were guilty of contributory negligence as a matter of law, and that such contributory negligence was a proximate cause of collision.

We shall consider these propositions in the order stated.

The defendant contends that plaintiff's first cause of action sounded in tort and is not assignable. To this we cannot agree.

"A thing in action is a right to recover money or other personal property by a judicial proceeding." NDRC 1943, 47–0702.

"A thing in action arising out of the violation of a right of property or out of an obligation may be transferred by the owner. * * *" Sec. 47–0703, NDRC 1943.

The cause of action for injury to the automobile clearly falls within these provisions of the statutes quoted. It is difficult to see how these provisions could be construed to have any other meaning. Stapp v. Madera Canal & Irrigation Co., 34 Cal.App. 41, 46, 166 P. 823; Cassetta v. Del Frate, 116 Cal.App. 255, 2 P.2d 533. In Cassetta v. Del Frate, supra, the California Court in construing a statute of that state, which so far as material here was identical with NDRC 1943, 47–0703, held that a claim for damages to property in an automobile accident was assignable.

The trial court correctly overruled defendant's demurrer to plaintiff's first cause of action.

The plaintiff and her husband are farmers residing some thirty miles north of Bismarck. The plaintiff, her husband and their four small children drove to Bismarck, September 7th and started for their home shortly before 8 o'clock in the evening, driving east on U.S. Highway No. 10. John Kaiser, plaintiff's husband testified in substance as follows:

He and his wife, the plaintiff, and their four small children left Bismarck shortly before 8 o'clock in the evening; the sun was down, the lights on his car were turned on and the windows of his car were open on both sides; his wife and the youngest child were riding with him in the front seat; he was looking east toward the railroad crossing, but did not see any train and heard no whistle and no bell ringing; another car passed him and he followed this car a short distance some four feet behind it; this car, he said, crossed the railroad crossing just before the collision; he saw the "black engine" when he was about 35 feet from the crossing but saw no headlight on the engine; he slammed on his brakes turned short to the right to avoid the collision but his car was struck on the left side by the diesel engine and was considerably damaged; the lights on his car were still on when it came to rest; his wife, the plaintiff opened the door and attempted to jump out of the car, but the door flew back, and struck her; when the car came to rest it was just far enough away from the track to permit the train to pass without touching it; before the collision his car was in good mechanical condition, the brakes were good; he had been driving cars for twenty-five years and his eyesight and hearing were good; he stated further that before the collision his car was worth $500 and that after the collision it was hardly worth $50.

The plaintiff testified that she was 37 years old; that she with her husband and children were living on a farm near Baldwin, and that they were farmers; that she

had completed the sixth grade in school and had always lived on the farm; that on the day of the collision she and her four children rode with her husband to Bismarck; they left Bismarck on their way home shortly before 8 o'clock in the evening; the sun was down and it was getting dark; she was riding in the front seat with her husband and their daughter who was one and one-half years old; three other small children between the ages of 2 and 5 years were riding in the back seat; they were driving east on U. S. Highway No. 10 towards the Soo Line crossing at 24th Street; the headlights of the car were turned on; the traffic was heavy; cars were driving east and west; the windows of the two doors of their car were open; she was looking east in the direction they were driving; she did not see any train approaching nor did she hear any warning of any kind and saw no headlight of the train; before they reached the crossing one car passed them going east and drove over the crossing just before the collision; she did not see the train until just before the collision; her husband slammed on the brakes and turned sharply to the right; and they collided with the diesel engine; she opened the door and tried to jump out, but the door flew back and struck her; she was hurt in the accident and went to a doctor three days later. She further stated that she never drove a car and "had never touched a wheel yet"; that before commencing this action her husband made a written assignment to her of his claim for damages against the railroad and it was admitted in evidence as plaintiff's exhibit 5. She further testified that she had good eyes and could see to do her sewing without the aid of glasses; her hearing also was good. Plaintiff's exhibits 3 and 4 show hospital expenses in the sum of $51.66 and a doctor bill of $150.00. There was considerable medical testimony indicating some injury to her left breast, bruises to the left knee and she had an injury to her lower spinal column.

It is not necessary to recite in detail the lengthy medical examination and the finding of the examining physicians based thereon, except to say that it appears certain that the plaintiff suffered considerably from injuries and shock as a result of the collision.

Paul John Tipton testifying for the defendant stated that he was conductor on the train that collided with plaintiff's car and that it came into Bismarck from the southeast; that it was traveling 10 miles per hour, and the collision with plaintiff's automobile occurred at about 7:35 p. m. September 7th; the train consisted of five cars, one baggage car and a combination car, and he was riding in the combination car; he heard the emergency brake applied and when the train stopped he stepped out of his car and walked to the crossing and then discovered that plaintiff's automobile had collided with the diesel engine of the train; the automobile was headed southeast and just far enough away from the cars to permit the train to move on; the diesel engine was equipped with a horn and a bell; he heard the sound of the horn for the crossing when he was in the coach, but did not hear the bell; at the time of the collision the speed of the train was not in excess of 10 miles per hour; he uncoupled the train to permit traffic over the crossing. Dave Crawford, the engineer stated that the engine was equipped with two electric whistles, one in the front of the cab and one to the rear and it was also equipped with a bell; the headlight of the diesel had a 250 watt light bulb, and had a high beam and a low beam or dimmer; the low beam is kept on during the day and the high beam is turned on when it gets dusk; in approaching the crossing where the collision occurred he was traveling at a speed not in excess of 10 miles per hour; he sounded the whistle for this crossing and continued the last blast until he crossed the crossing and he also rang the bell continuously; as he approached the crossing the fireman gave him the signal to apply the emergency brake when he was just on the west side of the crossing over No. 10; he got the signal from the fireman after he had quit blowing the whistle; he did not see any car drive across the crossing just before the colli-

sion; he did not hear the noise of the impact of the collision, but after stopping the train he walked back and then saw plaintiff's car heading southeast but did not see the occupants; he examined the diesel engine and found marks of the impact on the diesel engine from the center oil box all the way back to the speedometer cable. With reference to the headlight of the diesel engine, he stated that if it was on high beam you could see an object up to a thousand feet away, but on low beam or dim you could not see much farther than if it was not on; it was just dusk when he stepped out of the engine to go back to where the collision occurred and he noted the time to be 7:35 p. m.

Myron Ode testifying for the defendant stated that he operated Ray's Friendly Service located about 500 feet west of the railroad crossing on No. 10; he was on duty on the evening of September 7th when the collision occurred; he heard the whistle of the defendant's train,—one blast and he saw the light from the engine, but did not hear the crash; he was servicing a car at the time.

Nick A. Kronberger testifying for the defendant stated that he was a brakeman on the train that collided with plaintiff's car and was riding in the combination car; he stepped out of the combination car after the collision and went over to plaintiff's automobile and noticed that it was "about parallel with the track and that it had a clearance of about 4 inches from the cars"; he noticed marks on the left side of the diesel engine. As to whether the headlight of the diesel engine was on he testified as follows:

"Q. When you came up, could you tell whether the headlight on the diesel engine was on? A. Well, I'd say yes.

"Q. Well, I want to know, if you know. If you don't know, just tell us. A. Well, I never went up and looked at it.

"Q. But it would throw a beam, wouldn't it? A. Yes.

"Q. At that time in the evening, did you see it or did you not? A. I can't say that I did."

Albert Mischel, a witness for the defendant stated that he was employed by Orin Thompson whose place of business is a short distance south of the Soo Line crossing at 24th Street and adjoins the right of way of the defendant; on September 7th the date of the collision he heard the whistle of the train that collided with plaintiff's car; he saw plaintiff's car traveling east toward the crossing at a speed of about 25 miles per hour but did not notice whether its lights were on, it slowed down and turned sharply to the right when it was 30 to 40 feet from the crossing, and at that time the train was about the same distance from the crossing; before the collision he saw Thompson running toward the car trying to flag it down and he saw the collision; on cross-examination he admitted that four days after the accident he gave a written statement to plaintiff's attorney of the circumstances of the collision as he knew them at the time and that the statements contained therein were true. This statement was introduced in evidence as plaintiff's exhibit 6, and is as follows:

"My name is Albert Mischel, I live at 705 South 17th Street in Bismarck, N. Dak. and am employed at the Orin Thompson used car establishment on 24th and Main in Bismarck.

"At about 8:00 P.M., last Friday, Mr. Thompson and I were standing at the front door of his office talking. I heard a train approaching the crossing from the southeast because they blew the train whistle a long ways back, and as the train came closer I could hear it coming down the track. I don't know whether the train lights were on or not, but I could hear the train approach by the roar and rattle of the cars and by the whistle, which had blown quite a ways back. Just at this time Orin and I saw a car coming down the road from the west. We saw it quite a ways back and it was coming at

about 25 miles an hour. When the driver approached the railroad crossing he did not slow up and it looked like he didn't know the train was coming and that he would just about reach the crossing at the same time the train did. I don't know how fast the train was coming because it was behind our office, but Orin started out toward the crossing, yelling for the driver to stop. The driver didn't see the train until too late to avoid the collision, but swerved to the right just before the impact.

"I don't know how badly anyone was hurt in the wreck but it appeared to me that there were no serious injuries.

"I have read this statement and it is true to the best of my knowledge.

"Dated this 11th. day of September, 1951."

/s/ Albert Mischel."

Orin Thompson a witness for the defendant stated that his business was selling used cars and that his place of business was about 60 feet south from U. S. Highway No. 10 at 2419 East Main near the Soo Line crossing and he was at his place of business on September 7th when plaintiff's car collided with defendant's train; he heard the train coming and the whistle blowing but did not recall whether he heard more than one blast, and he did not notice whether the headlight of the diesel was on or off; he saw plaintiff's car about 100 feet west of the crossing traveling east at about 20 miles per hour and he saw the train coming from the southeast and he ran out and tried to warn the driver; he saw the car swerve to the right and that it collided with the diesel; he did not notice whether the headlights of the car were on; when it stopped there was just enough clearance for the railroad cars to go by.

John Paul Wisciskola testified that he was the section foreman of the defendant and was in the employ of the defendant at the time of the collision; that there were crossbuck signs on each side of the railroad crossing on the day of the collision September 7th and that there were reflectors on the crossbucks.

Howard Soule was the fireman on the diesel engine and was on duty on the day of the collision September 7th; the train was traveling about 10 miles per hour when approaching the crossing and he heard the sound of the horn; he thought the headlight of the diesel must have been on high; he saw plaintiff's car some 40 to 50 feet away from the crossing and when it did not stop he gave the emergency brake signal and the engineer applied the brakes just as the collision took place.

Alton Schuette testifying for the defendant stated that he was a brakeman on the train that collided with plaintiff's automobile on September 7th and was riding in the combination car, and that the train was traveling about 10 miles an hour when approaching the crossing on highway No. 10; he could not say that he heard the whistle of the diesel engine, but could tell that the emergency brake was applied; he did not know whether the headlight of the engine was on before the accident.

In the instant case there was, as usual in such cases, a conflict in the testimony. Plaintiff and her husband testified that the sun was down and that the headlights of the car were on bright and the windows of the Chevrolet automobile were open on both sides. They were looking toward the east in the direction they were driving and they testified positively that they did not see the train, and saw no headlight and heard no sound of whistles or bells although both had normal hearing and sight. Plaintiff's husband the driver of the car had driven cars for 25 years or more and the car that they were driving was in good mechanical condition. He did not see any light or hear any whistle or bell and the first thing that he saw was a "black engine" and he then slammed on his brakes and turned sharply to the right and that the left side of his car collided with the diesel engine. Plaintiff and her husband both testified that another car passed them traveling east and that this particular car crossed the crossing just before the collision.

The train crew including the conductor, engineer and fireman stated that the headlight of the engine was on and that the whistle sounded and the bell was ringing before they reached the crossing. There was some disagreement in the testimony given by the witnesses for the defendant. Albert Mischel one of the witnesses for the defendant testified on cross-examination "I heard the train approaching the crossing from the southeast because they blew the train whistle a long ways back". The written statement of this witness taken four days after the collision, plaintiff's exhibit 6 to which reference has been made herein, stated that he did not know whether the headlight of the train was on, that he heard the train approach by the roar and the rattle of the cars and by the whistle which had blown quite a ways back. The fireman stated that he heard the sound of the horn when they were approaching the crossing and that he thought that the headlight of the diesel was on. When asked on cross-examination whether the light was on, his answer was, "It must have been on". The plaintiff and her husband testified positively that they saw no headlights and heard no whistle or bell sounding. They were driving due east and the train was approaching the crossing at an obtuse angle from the southeast only a short distance away. At the angle of approach of the train, the headlight of the engine, if it was on, would be shining almost directly into their faces and it would indeed be strange if they did not see it, in view of the testimony of the engineer that when the headlight was on bright an object could be seen at a distance of 1000 feet. It is not disputed that the eyesight and hearing of the plaintiff and her husband were normal.

Sections 49–1121 and 49–1302, 1949 Supp. NDRC 1943 define the duties of railroads with reference to warning to be given by trains approaching highway and street crossings and are as follows:

"49–1121. A bell of at least thirty pounds in weight or a steam whistle or an air horn shall be placed on each locomotive engine and shall be rung or whistled or sounded at a distance of at least eighty rods from the place where the said railroad shall cross any other road or street and shall be kept ringing or whistling or sounded until it shall have crossed said road or street."

"49–1302. No railroad corporation nor its officers, agents, or employees shall use any locomotive engine in moving traffic or in the transportation of passengers or property within this state in main line service, between the hours of sunset and sunrise, unless said locomotive engine shall be equipped with a headlight of at least twelve hundred candlepower of light when measured without the aid of a reflector, except in the following cases:

"1. In passing through or working within the yard limits of any station or terminal, a light of lesser candlepower may be used * * *."

There is therefore a sharp dispute in the testimony as to whether the defendant negligently violated the duties imposed upon it by law in failing to give proper warning in approaching the crossing involved by sounding the whistle or ringing the bell, and turning on the headlight of the engine; or whether the plaintiff and her husband were guilty of contributory negligence in failing to keep proper lookout in approaching the railroad crossing and to exercise due care and caution for their own safety, and whether such negligence or contributory negligence, if established by the evidence, was the proximate cause of the collision.

It is well settled that the question of negligence of a defendant or the contributory negligence of a plaintiff is one of fact for the jury and becomes a question of law only when reasonable men can draw but one conclusion from the evidence.

"The question of negligence, whether it be of a defendant or the alleged contributory negligence of a plaintiff, is primarily and generally a question of fact for the jury. The question becomes one of law, authorizing its withdrawal from the jury, only when but

one conclusion can be drawn from the undisputed facts." Pyke v. City of Jamestown, 15 N.D. 157, 107 N.W. 359, 363.

See also Bratvold v. Lalum, 68 N.D. 534, 282 N.W. 514, Heckman v. Evenson, 7 N.D. 173, 73 N.W. 427.

Upon the record before us and the authorities cited we are satisfied that the questions of negligence and contributory negligence were properly submitted to the jury, and the jury having resolved the issues in favor of the plaintiff their verdict will not be disturbed.

The judgment appealed from is affirmed.

MORRIS, C. J., and CHRISTIANSON, GRIMSON and BURKE, JJ., concur.