McJUNKIN v CELLASTO PLASTIC CORPORATION

Docket No. 110940. Argued October 13, 1999 (Calendar No. 5). Decided
March 29, 2000.

Gary L. McJunkin was awarded worker's compensation after suffering
a work-related back injury. His employer, Cellasto Plastic Corpora-
tion, assigned him light duty. Following back surgery, his employer
offered him a version of his former job, reasonably structured to
accommodate his disability. After making an effort to perform the
work, the plaintiff left, complaining of severe back pain. His sur-
geon later instructed him not to return to work until further notice.
Thereafter, the defendant referred the plaintiff to another doctor
who substantiated the back pain, but concluded that the plaintiff
could return to work, with restrictions. The employer again offered
the plaintiff his former restricted position, but the plaintiff refused
it, relying on the instruction of his surgeon. Later, during the sur-
geon's deposition, after viewing a videotape of the light-duty job,
the surgeon concluded that the plaintiff probably could perform the
work, but that he would likely suffer pain and needed to be inte-
grated into full-time work gradually. The plaintiff thereafter tele-
phoned the defendant and offered to accept the employment. How-
ever, his employer informed him that the job had been restructured
and that it was no longer available. The plaintiff then sought rein-
statement of his disability benefits. A magistrate, although finding
that the plaintiff suffered from a work-related injury that required
surgery and restricted his ability to perform certain physical tasks,
terminated the plaintiff's benefits, reasoning that he had unreasona-
bly refused to perform work that was within his limitations. The
Worker's Compensation Appellate Commission affirmed, and addi-
tionally found that the employer was not required to keep open the
offer of reasonable employment indefinitely, but only for a reasona-
ble period. The Court of Appeals, Nᴇꜰꜰ and Rᴇɪʟʟʏ, JJ. (Sᴀᴀᴅ, P.J.,
concurring), agreed with the wcᴀᴄ that the plaintiff unreasonably
refused reasonable employment, but reversed the holding that
plaintiff automatically forfeited his benefits when he refused the
offer of employment. It held that, if an employer can no longer
offer reasonable employment to a disabled employee willing to do
it, benefits are reinstated for however long the employee is availa-
ble to work. 226 Mich App 234 (1997) (Docket No. 198732). Ini-

tially, the Supreme Court denied the defendant's application for leave to appeal, 459 Mich 854 (1998), but later granted reconsideration to determine whether the Court of Appeals erred as a matter of law by holding that, under the circumstances, the WDCA never allows a permanent forfeiture of benefits. 459 Mich 927 (1998). The defendant appeals.

In an opinion by Justice KELLY, joined by Chief Justice WEAVER, and Justices TAYLOR, CORRIGAN, YOUNG, and MARKMAN, the Supreme Court held:

Where an employee ends a period of unreasonable refusal of reasonable employment and the employer reneges on its earlier offer, MCL 418.301(5); MSA 17.237(301)(5) requires reinstatement of disability benefits. The elapsed time before an employee attempts to end a period of refusal is irrelevant to the renewal of benefits. Pursuant to the clear and plain meaning of subsection 301(5)(a), an employee need only end the period of unreasonable refusal to trigger renewal of benefits. The result does not change where the employment is no longer available when the period of unreasonable refusal ends.

1. An employee's revocation of the unjustified refusal to accept reasonable employment, rather than the employer's withdrawal of a job offer, is the proper point for benefit renewal. There is no provision in the WDCA for an employee's permanent forfeiture of benefits as a result of unreasonably refusing an offer of reasonable employment.

2. In this case, the period of unreasonable refusal ended on February 12, 1993. On that day, the defendant deposed the plaintiff's surgeon who indicated that the plaintiff could perform the job, notwithstanding his disability and work restrictions. The plaintiff then contacted the defendant and offered to return to the net-assembly job. A period of slightly more than seven months had elapsed, and the plaintiff was told that the job was not immediately available, but that the company would contact him when it was. He continued to telephone the defendant, inquiring about the employment until the defendant finally told him that the offer was no longer open, because the position had been permanently restructured. Reinstatement of the plaintiff's benefits must be made, effective February 12, 1993, the date he ended his period of unreasonable refusal.

Justice CAVANAGH, concurring, stated that the language of subsection 301(5)(a) supports the conclusion that an employee's subsection 301(5) benefit entitlement is suspended as long as the employee remains in a period of unreasonable refusal. If the employee ends the period of refusal while still disabled, then the

employer is bound to pay benefits or extend a reasonable offer of favored work pursuant to subsection 301(5)(a). In cases where the employee loses a job, the employee may also be able to pursue a remedy under subsections (d) and (e).

Affirmed in part and modified.

*Williams, Fotieo, Szczytko & Fedewa, P.C.* (by *Tonya A. Fedewa*), for plaintiff-appellee.

*Grzanka, Grit* (by *Constance J. Grzanka* and *Mark A. Warber*) for defendant-appellant.

Amici Curiae:

*Richard F. Zapala* for the Accident Fund Company.

*Daryl Royal* for Michigan Trial Lawyers Association.

KELLY, J. Does subsection 301(5) of the Worker's Disability Compensation Act (WDCA)[1] require automatic renewal of benefits when a disabled employee revokes an unreasonable refusal of reasonable employment and the employer reneges? We find that it does. Hence, we affirm the result reached by the Court of Appeals, but modify its rationale.

We conclude that, where an employee ends a period of unreasonable refusal, subsection 301(5) requires reinstatement of disability benefits. The result does not change where, as here, the employment is no longer available when the period of unreasonable refusal ends.

---

[1] MCL 418.101 *et seq.*;  MSA 17.237(101) *et seq.*

I

Plaintiff suffered a work-related back injury in January 1991. He received worker's compensation benefits and was advised not to work until August, when he began to perform a light-duty "net-assembly" job four hours a day.

Then, in December 1991, plaintiff had surgery on his back. The surgeon required him not to work until June 22, 1992. At that time, his employer offered plaintiff a version of his former net-assembly job. The offer was reasonable in that the job was structured to accommodate plaintiff's disability.

Plaintiff made an effort to perform the work, but left after approximately five minutes, complaining of severe back pain. Several days later, he obtained written instructions from his surgeon that he not return to work until further notice.

In July of 1992, defendant referred plaintiff to another doctor who examined him. The doctor found substantiation for plaintiff's subjective complaints of back pain. However, he concluded that plaintiff could return to work, with numerous restrictions. The employer again offered plaintiff the net-assembly position, but plaintiff refused it, relying on the instruction from his surgeon that he was not to work until further notice.

Plaintiff's surgeon was deposed on February 12, 1993, and was shown a videotape of the light-duty net-assembly job. The surgeon concluded that plaintiff probably could perform the work, but that he would likely suffer pain and that he needed to be integrated into full-time work gradually.

Plaintiff, who had attended his surgeon's deposition, telephoned defendant the same day and offered to accept the employment. He was informed that the net-assembly job had just been restructured. Two people instead of three now performed it, and there was no longer a position available for him.

Plaintiff sought reinstatement of his disability benefits. The magistrate found that he suffered from a work-related injury that required surgery and restricted his ability to perform certain physical tasks. However, the magistrate terminated plaintiff's benefits, because he had unreasonably refused to perform work that was within his limitations.

The Worker's Compensation Appellate Commission affirmed the magistrate's ruling. Additionally, it found that defendant was not required to keep open the offer of reasonable employment indefinitely, but only for a reasonable period. By implication, the WCAC held that the seven months defendant kept the reasonable employment offer available before restructuring it was a reasonable period.

The Court of Appeals agreed with the WCAC that plaintiff unreasonably refused reasonable employment. However, it reversed the holding that plaintiff automatically forfeited his benefits when he refused the offer of employment. It held that, if an employer can no longer offer reasonable employment to a disabled employee willing to do it, benefits are reinstated for however long the employee is available to work.

Initially, we denied defendant's application. 459 Mich 854 (1998). We later granted reconsideration to determine whether the Court of Appeals erred as a matter of law by holding that, under the circum-

stances, the WDCA never allows a permanent forfeiture of benefits.[2] 459 Mich 927 (1998).

II

Defendant points out that there was no clear majority in this Court's opinion in *Derr v Murphy Motor Freight Lines*, 452 Mich 375; 550 NW2d 759 (1996). Therefore, it asserts, the *Derr* decision does not constitute binding authority under the doctrine of stare decisis. See *Negri v Slotkin*, 397 Mich 105, 109; 244 NW2d 98 (1976).

Defendant claims that the controlling authority is *Russell v General Motors Corp*, 172 Mich App 627; 432 NW2d 738 (1988). In *Russell*, the employee unreasonably refused the employer's offer of favored work. The Court of Appeals held that the employer had to keep open its offer only for a reasonable time.

Defendant notes that plaintiff in this case unreasonably refused its offer of reasonable employment and that, nonetheless, it kept the position available for nearly seven months. Hence, applying the *Russell* "reasonable time limitation," plaintiff is not now entitled to reinstatement of benefits.

III

In 1981, the Legislature amended the WDCA, codifying the judicially created favored work doctrine into its present form. *Pulver v Dundee Cement Co*, 445 Mich 68, 74-75; 515 NW2d 728 (1994); see also 1981

---

[2] This case was consolidated and argued with *Perez v Keeler Brass Co*, 461 Mich 602; 608 NW2d 45 (2000), and *Russell v Whirlpool Financial Corp*, 461 Mich 579; 608 NW2d 52 (2000). All three address issues that have arisen in the application of subsection 301(5).

PA 200; 1981 PA 199. Regarding the suspension of disability benefits when an employee unreasonably refuses an offer of reasonable employment, the Legislature provided:

> If disability is established pursuant to subsection (4), entitlement to weekly wage loss benefits shall be determined pursuant to this section and as follows:
>
> (a) If an employee receives a bona fide offer of reasonable employment from the previous employer, another employer, or through the Michigan employment security commission and the employee refuses that employment without good and reasonable cause, the employee shall be considered to have voluntarily removed himself or herself from the work force and is no longer entitled to any wage loss benefits under this act during the period of such refusal. [MCL 418.301(5)(a); MSA 17.237(301)(5)(a).]

Issues concerning the interpretation and application of statutes are questions of law that this Court decides de novo. *Lincoln v General Motors Corp*, 461 Mich 483, 489-490; 607 NW2d 73 (2000).

IV

This Court last addressed the issue of permanent forfeiture of benefits under the WDCA's reasonable employment doctrine four years ago in *Derr v Murphy Motor Freight Lines, supra*. There was no majority opinion in *Derr*. Justices CAVANAGH and LEVIN joined Justice MALLETT's lead opinion. They held that disability benefits are temporarily suspended when an employee unreasonably refuses an offer of reasonable employment. However, the benefits are automatically reinstated when the offer is withdrawn, regardless of whether the employee has attempted to end the period of refusal. In determining whether an

employee obtains reinstatement of benefits, the lead opinion focused first on the actions of the employer, specifically inquiring whether it kept the position open. Only then did it examine the actions of the employee. *Derr, supra* at 392.

Justice BOYLE concurred separately, and Chief Justice BRICKLEY was joined in his dissent by Justice RILEY. All three examined the language of subsection 301(5)(a) and found that whether benefits are reinstated should depend on whether the employee ended the period of refusal. *Derr, supra* at 394, 396-397.

This position, taken by Chief Justice BRICKLEY, and Justices RILEY and BOYLE in *Derr*, properly deferred to the intent of the Legislature as reflected by the clear and plain meaning of the statute. It reasoned that, if the employee "voluntarily removed himself or herself from the work force" by refusing the employer's offer of reasonable employment "without good and reasonable cause," the employee alone was responsible for the temporary suspension of benefits "during the period of such refusal." MCL 418.301(5)(a); MSA 17.237(301)(5)(a); see *Derr, supra* at 394, 398.

V

The employee's revocation of the unjustified refusal to accept reasonable employment, rather than the employer's withdrawal of a job offer, is the proper point for benefit renewal.

By way of contrast, the *Russell* "reasonable time limitation" examines the acts of the employer. In *Russell*, the Court of Appeals allowed permanent forfeiture of benefits where the employer kept open an

offer for approximately eighteen months. *Russell,
supra* at 631.

We reject *Russell's* holding that, after the lapse of
enough time, no attempt by the employee to end the
period of refusal will result in benefit renewal. *Russell, supra* at 632. The WDCA provides no basis for
imposing such a limitation on the employee's ability
to revoke the initial refusal. There is no provision in
the WDCA for an employee's permanent forfeiture of
benefits as a result of unreasonably refusing an offer
of reasonable employment.

The relevant employment events in *Russell* all
occurred before the Legislature adopted subsection
301(5), which became effective in 1982. Thus, the
*Russell* decision does not interpret or apply the
underlying statute. MCL 418.301(5); MSA
17.237(301)(5). Instead, it relies on principles established by case law predating the Legislature's codification of the judicially created favored work doctrine.
The Legislature worked a subsequent change or
development in the law when it codified the favored
work doctrine as the reasonable employment doctrine. See 1981 PA 200; 1981 PA 199.

The primary goal of judicial interpretation is to
ascertain and give effect to the intent of the Legislature. *Frankenmuth Mut Ins Co v Marlette Homes,
Inc*, 456 Mich 511; 573 NW2d 611 (1998). "[N]othing
will be read into a statute that is not within the manifest intent of the Legislature as gathered from the act
itself." *In re S R*, 229 Mich App 310, 314; 581 NW2d
291 (1998). As case law must accurately reflect the
legislative enactment on which it is based, *Russell*
must be abandoned.

VI

All that remains is to lay this template over the facts of the present case.

As found by the magistrate and affirmed by the WCAC, the plaintiff began his period of unreasonable refusal on June 22, 1992. It was then that he made an attempt to perform the net-assembly job that defendant had offered as reasonable employment.

The period of unreasonable refusal ended on February 12, 1993. On that day, defendant deposed plaintiff's surgeon who opined that plaintiff could perform the job, notwithstanding his disability and work restrictions. Plaintiff then contacted defendant and offered to return to the net-assembly job. A period of slightly more than seven months had elapsed. He was told that the job was not immediately available, but that the company would contact him when it was. Plaintiff continued to telephone defendant, inquiring about the employment. Finally, defendant told him that the offer was no longer open, because the position had been permanently restructured.

VII

We affirm the ruling of the Court of Appeals that plaintiff unreasonably refused reasonable employment. We modify the additional holding. Reinstatement of plaintiff's benefits must be made, effective February 12, 1993, the date he ended his period of unreasonable refusal.

We overrule *Russell*, because it relies on the length of the period an employer keeps open an offer of employment. We also abandon *Russell* because it sets an unspecified length of time beyond which no

attempt to end the period of refusal will result in benefit renewal.

Instead, we hold that the elapsed time before an employee attempts to end a period of refusal is irrelevant to the renewal of benefits. Pursuant to the clear and plain meaning of subsection 301(5)(a), an employee need only end the period of unreasonable refusal to trigger renewal of benefits.

WEAVER, C.J., and TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred with KELLY, J.

CAVANAGH, J. I concur with the majority. I write separately, however, to explain my departure from the lead opinion I signed in *Derr v Murphy Motor Freight Lines*, 452 Mich 375; 550 NW2d 759 (1996). Today, we move away from Justice MALLETT's *Derr* opinion and adopt Chief Justice BRICKLEY's dissenting view. I support the shift to Chief Justice BRICKLEY's philosophy.

In *Derr, supra*, this Court examined subsection 301(5)(a) of the Worker's Disability Compensation Act, MCL 418.301(5)(a); MSA 17.237(301)(5)(a). The lead opinion held that benefit entitlement arises under subsection 301(5)(a) when an offer of favored work is revoked, regardless of whether the employee is in a period of unreasonable refusal at the time of revocation. *Id.* at 392. Chief Justice BRICKLEY would have held that an employee must affirmatively end a period of unreasonable refusal before that employee can become entitled to benefit payment. *Id.* at 395.

*McJunkin* came before this Court in consolidation with two additional cases, *Russell v Whirlpool Financial Corp*, 461 Mich 579; 608 NW2d 52 (2000), and *Perez v Keeler Brass Co*, 461 Mich 602; 608 NW2d 45 (2000). Today's triad of cases provided us with an

opportunity to review the interrelationship between subsections 301(5)(a), (d), and (e). As sometimes happens when opportunity knocks, I gained a new perspective after opening the door. I am now persuaded that *McJunkin*, *Russell*, and *Perez* present a favorable approach to analyzing cases arising under subsection 301(5).

The language of subsection 301(5)(a) supports the conclusion that an employee's subsection 301(5) benefit entitlement is suspended as long as the employee remains in a period of unreasonable refusal. If the employee ends the period of refusal while still disabled, then the employer is bound to pay benefits or extend a reasonable offer of favored work pursuant to subsection 301(5)(a). In cases where the employee loses a job, the employee may also be able to pursue a remedy under subsections (d) and (e).

I am satisfied that Justice KELLY's opinion safeguards the interests protected by the WDCA and gives effect to the language of subsection 301(5)(a). I, therefore, concur with both the rationale and holding of the majority opinion.