PEREZ v KEELER BRASS COMPANY

Docket No. 112107. Argued October 13, 1999 (Calendar No. 6). Decided
    March 29, 2000.

In a unanimous opinion by Justice YOUNG, the Supreme Court
    held:

    The withdrawal of an offer of reasonable employment does not
    end an employee's period of refusal under the Worker's Disability
    Compensation Act, and, therefore, does not entitle the employee to
    benefits.

    1. The Legislature used the term "refuses" in the worker's com-
    pensation act broadly to encompass all situations where an

employee elects not to perform offered reasonable employment. Thus, a disabled worker who quits or otherwise refuses reasonable employment does not permanently forfeit benefits; rather, benefits are lost during the period of refusal.

2. The only party who can end a period of refusal is the disabled employee. An employee's unreasonable refusal of reasonable employment is equivalent to a withdrawal from the work force. To be entitled to the reinstatement of benefits, the employee must end the voluntary absence, and demonstrate that it has ended.

3. In this case, it is undisputed that the plaintiff voluntarily left his job in April 1987, thus refusing reasonable employment. He took no action to end the period of refusal until November 1990. Thus, he was not entitled to benefits from April 1987 until November 1990. In addition, the magistrate found that the plaintiff was no longer disabled as of February 1990, and thus was not entitled to benefits after that date.

Affirmed.

*Drew, Cooper & Anding, P.C.* (by *Stephen R. Drew*), for the plaintiff.

*Grzanka, Grit* (by *Constance J. Grzanka* and *Mark A. Warber*) for defendant-appellee.

Amici Curiae:

*Richard F. Zapala* for the Accident Fund Company.

*Daryl Royal* for Michigan Trial Lawyers Association.

YOUNG, J. We granted leave in this case to consider whether a disabled worker who unreasonably refuses an offer of reasonable employment is entitled to reinstatement of worker's compensation benefits once the offer of reasonable employment is withdrawn. We conclude that the withdrawal of an offer does not end the employee's "period of refusal" under the Worker's Disability Compensation Act, and, therefore, that the withdrawal of an offer does not entitle the employee

to benefits. Accordingly, we affirm the decisions of the WCAC and the Court of Appeals.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts of this case are essentially undisputed. Plaintiff Ramon Perez injured his back while working for defendant Keeler Brass Company in 1986. He was off work for a few weeks, and then returned to a light-duty job. After a few months on the light-duty job, plaintiff quit to go to New Jersey.[1] At the time he quit, plaintiff refused to sign a "quit slip." Defendant waited two or three days, and, when plaintiff did not show up for work, defendant formally terminated him. This formal termination occurred in April 1987. Nearly two years later, in January 1989, plaintiff filed a petition for worker's compensation benefits. In November 1990, plaintiff offered to return to work for defendant.

The worker's compensation magistrate found that plaintiff had suffered a work-related injury. However, the magistrate found that plaintiff was offered reasonable employment, and that he was performing that reasonable employment until the day he quit. The magistrate was "not persuaded that Plaintiff left his job because he was unable to perform it." On that basis, the magistrate concluded that plaintiff "unreasonably refused favoring work" (more properly termed "reasonable employment" under the statute).

---

[1] Plaintiff disputes use of the term "quit." Plaintiff admits, however, that the magistrate's findings in this regard are supported by substantial evidence. The magistrate described plaintiff's departure as a "voluntary abandonment of favoring work." We believe that the term "quit" clearly and accurately describes the magistrate's findings. In any event, this issue is not dispositive.

The magistrate also found that plaintiff was terminated less than three days after this unreasonable refusal. The magistrate then found that plaintiff's disability ended on February 1, 1990.

The parties do not argue that the magistrate's findings, as outlined above, were inaccurate. Instead, the parties dispute the application of the law to those findings.

## II. THE LAW

The relevant provisions of the Worker's Disability Compensation Act (WDCA) provide:

> (1) An employee, who receives a personal injury arising out of and in the course of employment by an employer who is subject to this act at the time of the injury, shall be paid compensation as provided in this act.
>
> *     *     *
>
> (5) If disability is established pursuant to subsection (4), entitlement to weekly wage loss benefits shall be determined pursuant to this section and as follows:
>
> (a) If an employee receives a bona fide offer of reasonable employment from the previous employer, another employer, or through the Michigan employment security commission and the employee refuses that employment without good and reasonable cause, the employee shall be considered to have voluntarily removed himself or herself from the work force and is no longer entitled to any wage loss benefits under this act during the period of such refusal. [MCL 418.301; MSA 17.237(301).][2]

---

[2] Plaintiff has not argued that MCL 418.301(5)(d) or (e); MSA 17.237(301)(5)(d) or (e), apply here. Those subsections deal with an employee who "loses his or her job." As discussed below, although plaintiff eventually was formally terminated, he had already quit, and he cannot be said to have "lost" his job.

Subsection (5) was added to the statute in 1982. See 1981 PA 200. Before that time, the statute did not address "reasonable employment," and this issue was governed by an area of the common law known as the "favored-work doctrine." *Arnold v General Motors Corp*, 456 Mich 682, 683, n 2; 575 NW2d 540 (1998). Now, however, the quoted statutory provisions establish the law in this area. The Legislature chose the words of the statute, and we are bound by them. Any cases decided under the common law before subsection (5) was enacted are essentially irrelevant; to the extent that the common-law favored work doctrine is inconsistent with the plain language of the statute, the Legislature has changed the common law. This is a proper exercise of legislative authority. Const 1963, art 3, § 7.

### III. APPLICATION OF THE LAW BELOW

The magistrate treated plaintiff's decision to quit as an unreasonable refusal of reasonable employment. However, the magistrate also treated the employer's subsequent termination of plaintiff as a withdrawal of the offer of reasonable employment. The magistrate then concluded that once the offer was withdrawn, there was nothing left for plaintiff to refuse, and therefore that benefits should be awarded starting with the termination and continuing until the disability ended on February 1, 1990.[3] The magistrate's position is essentially the same one that three justices of

---

[3] The magistrate also applied the one-year back rule, MCL 418.833(1); MSA 17.237(833)(1), to limit plaintiff's recovery. That issue is not before us.

this Court advocated in *Derr v Murphy Motor Freight Lines*, 452 Mich 375; 550 NW2d 759 (1996).[4]

Defendant appealed the magistrate's award of benefits to the Worker's Compensation Appellate Commission (WCAC). In a divided opinion, the WCAC reversed the magistrate's award of benefits. In its primary holding, the WCAC majority relied on the common law,[5] and found that plaintiff's decision to quit reasonable employment justified permanent forfeiture of benefits. Notwithstanding, the WCAC also recognized that the statute allows an employee who initially refuses reasonable employment without ever attempting to perform that employment to later end the "period of refusal" and thereby obtain benefits. The WCAC did not attempt to explain this apparent inconsistency between the statute, which allows benefits when an employee's period of refusal ends, and the pre-subsection (5) case law, which allowed permanent forfeiture of benefits after an unreasonable refusal. The WCAC simply indicated that refusing "reasonable employment" from the beginning only results in a "suspension" of benefits, while quitting reasonable employment results in a permanent forfeiture of benefits. 1997 Mich ACO 2960.

The WCAC denied benefits on two alternative theories. First, the WCAC found that plaintiff's disability ended before his "period of refusal" ended. Second, the WCAC concluded that plaintiff was terminated for

---

[4] *Derr* will be discussed below.

[5] See *Bower v Whitehall Leather Co*, 412 Mich 172; 312 NW2d 640 (1981), and *Powell v Casco Nelmor Corp*, 406 Mich 332; 279 NW2d 769 (1979). In a footnote, the WCAC asserted that these cases survived the codification of the "favored work" doctrine in the current version of the WDCA quoted above, but it did not cite any authority or offer any rationale in support of that assertion. 1997 Mich ACO 2952, 2960, n 3.

"good cause" and, therefore, that he was no longer entitled to benefits.

The Court of Appeals denied plaintiff's application for leave to appeal in a one-paragraph order, relying solely on one of the WCAC's alternative grounds—that plaintiff's disability ended before his period of refusal ended. We granted plaintiff's application for leave to appeal and ordered that this case be argued and submitted with *McJunkin v Cellasto Plastic Corp.*[6] 459 Mich 927 (1998).

### IV. ANALYSIS

We must begin by noting the issues that are *not* before us. Defendant has not contested the magistrate's finding that plaintiff suffered a work-related disability. Defendant also acknowledges that it formally terminated plaintiff in April 1987, within a few days after plaintiff left his job. Finally, defendant admits that plaintiff sought to return to his light-duty job in November 1990. Similarly, plaintiff admits that the record supports the magistrate's finding that he voluntarily refused reasonable employment. Plaintiff does not challenge the magistrate's finding that plaintiff's disability ended in February 1990. With those issues already resolved, our analysis is limited to the legal effect of the parties' actions after plaintiff quit.

Because the facts are not in dispute, leaving only a question of statutory construction, our review is de novo. *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401; 605 NW2d 300 (2000); *Donajkowski v Alpena Power Co*, 460 Mich 243, 248; 596 NW2d 574 (1999).

---

[6] Our opinion in *McJunkin* is also being released today. 461 Mich 590; 608 NW2d 57 (2000).

The parties have not addressed directly one of the preliminary questions presented in this case: namely, does the Worker's Disability Compensation Act apply in circumstances where an employer offers reasonable employment, and the employee performs that reasonable employment (or attempts to perform it), but later quits? Plaintiff appears to assume that the act applies. Defendant never directly addresses the question, but argues that we should apply pre-subsection (5) case law. As noted above, to the extent that the common law is inconsistent with the statute, the common law has been changed, and pre-subsection (5) case law is no longer relevant. We conclude that application of the common law to this case would be inconsistent with the plain language of the statute.

The WDCA does not expressly provide for a person who "quits reasonable employment." Instead, it refers to an employee who "refuses [reasonable] employment," MCL 418.301(5)(a); MSA 17.237(301)(5)(a), an employee who "loses his or her job through no fault of the employee," MCL 418.301(5)(d); MSA 17.237(301)(5)(d), and an employee who "loses his or her job for whatever reason," MCL 418.301(5)(e); MSA 17.237(301)(5)(e). We are to construe common words found in our statutes according to their everyday, plain meaning. MCL 8.3a; MSA 2.212(1). An employee who quits cannot reasonably be said to have "lost" his job within the common understanding of that word. Thus, subsections (d) and (e) do not apply to an employee who quits. The only remaining question is whether an employee who quits reasonable employment can be said to have "refused that employment" within the plain meaning of subsection (a). In this endeavor, it is essential to remember that

we are looking to the words of the statute in an attempt to divine the intent of the Legislature. *In re MCI*, 460 Mich 396, 411; 596 NW2d 164 (1999).

Subsection (a) refers to an employee who "refuses [reasonable] employment." We conclude that that phrase, standing alone, is ambiguous on the question whether it encompasses quitting. On one hand, the term "refuses" could be construed narrowly to apply only to an employee's rejection of the employer's initial offer of reasonable employment. On the other hand, "refuses" can be read more broadly to encompass an employee's refusal to do the offered work, even if the employee has performed the work previously. Such ambiguity is often easily resolved by reference to other language in a statute.[7]

MCL 418.301(1); MSA 17.237(301)(1) provides:

> An employee, who receives a personal injury arising out of and in the course of employment by an employer who is subject to this act at the time of the injury, *shall be paid compensation as provided in this act.* [Emphasis added.]

Similarly, the first paragraph of MCL 418.301(5); MSA 17.237(301)(5), provides: "If disability is established pursuant to subsection (4), entitlement to weekly wage loss benefits *shall be determined pursuant to this section* and as follows:" (emphasis added). Clearly, the Legislature intended the statute to be comprehensive. Under these circumstances, we can

---

[7] For instance, if the Legislature had included a subsection expressly dealing with employees who "quit reasonable employment," we would have no trouble concluding that the Legislature intended something different when it referred to an employee who "refuses [reasonable] employment." See *Guitar v Bieniek*, 402 Mich 152, 158; 262 NW2d 9 (1978) ("doubtful or ambiguous provisions of a statute are construed not in isolation but with reference to and in the context of related provisions").

only assume that the Legislature used the term "refuses" broadly to encompass all situations where an employee elects not to perform the offered reasonable employment. Any other construction would require us to look outside the statute, which would be patently inconsistent with the Legislature's express intent that an employee "shall be paid compensation as provided in this act," and that benefits "shall be determined" pursuant to the statute. On that basis, we conclude that we must examine the statute alone for guidance, and that the WCAC erred in applying the common law to the facts of this case.

Examining the words of the statute, it becomes clear that a disabled worker who quits or otherwise refuses reasonable employment does not permanently forfeit benefits.[8] Instead, the worker loses benefits "during the period of such refusal." This leads us to the issue left unresolved by our fractured decision in *Derr*: when does the "period of refusal" end?

In *Derr*, the plaintiff was injured on the job and was no longer able to perform his normal duties. After several months of medical leave, the defendant employer offered the plaintiff a light-duty job. The plaintiff refused the light-duty job, and the employer terminated his worker's compensation benefits. The

---

[8] Defendant argues that we should read a "reasonable time" provision into the statute, to protect employers from employees who wait months or years to withdraw their refusals. Because we conclude that plaintiff is not entitled to benefits anyway, we need not address this issue. However, we note that we address and reject defendant's position in *McJunkin v Cellasto Plastic Corp*, n 6 *supra*, also released today. Even if we agreed with defendant as a matter of policy, there is no basis for such a provision in the statute, and we are not free to craft a "judicial amendment." Looking solely to the language of the statute, it appears that the Legislature intended to allow a disabled employee to withdraw his refusal without reference to the length of the delay.

plaintiff eventually sought reinstatement of benefits. At about the same time, the employer declared bankruptcy and closed its doors. The magistrate found that the plaintiff had suffered a work-related injury, but that he had subsequently unreasonably refused a bona fide offer of favored work. Those findings were upheld by the Worker's Compensation Appeal Board (now the Worker's Compensation Appellate Commission), the Court of Appeals, and a majority of justices of this Court. *Derr, supra* at 379-382, 394. On the basis of those findings, the only remaining issue was the effect of the employer's bankruptcy. On that point, this Court was evenly divided.[9]

Justices MALLETT, LEVIN, and CAVANAGH all signed an opinion that would have held that an employer's decision to close its doors constituted a withdrawal of an offer, which, in turn, effectively ended the "period of refusal." *Id.* at 386-393. Justices BOYLE and RILEY and Chief Justice BRICKLEY dissented on this point. The latter three justices did not believe that the employer's bankruptcy necessarily ended the period of refusal. *Id.* at 394 (BOYLE, J.), 394-400 (BRICKLEY, C.J., joined by RILEY, J.). Because there was no majority for either position, *Derr* does not constitute a controlling opinion on this point.

Returning to the plain language of the statute, we conclude that the only party that can end the period of refusal is the disabled employee. The statute makes clear that an employee's unreasonable refusal of reasonable employment is equivalent to a withdrawal from the work force:

---

[9] Justice WEAVER did not participate in *Derr*.

> If an employee receives a bona fide offer of reasonable
> employment from the previous employer, another employer,
> or through the Michigan employment security commission
> and the *employee* refuses that employment without good
> and reasonable cause, *the employee shall be considered to
> have voluntarily removed himself or herself from the work
> force and is no longer entitled to any wage loss benefits
> under this act during the period of such refusal.* [MCL
> 418.301(5)(a); MSA 17.237(301)(5)(a) (emphasis added).]

In his opinion in *Derr*, Chief Justice BRICKLEY ana-
lyzed this statutory language:

> [T]he phrase "period of such refusal" as used in the WDCA
> refers to the employee's voluntary removal from the work
> force. Accordingly, that period ends only when the volun-
> tary removal ends.

*     *     *

> There is nothing in [the language of the statute] that
> equates the phrase "period of such refusal" with an inquiry
> into whether the offer is still open.
>
> The lead opinion's assertion that benefits must be rein-
> stated when the offer is withdrawn does not follow from
> the plain language of the statute. To mandate that result,
> the statute would need to contain a statement that "the
> employee is not entitled to benefits during the period the
> offer is open," or similar language. Under the plain language
> of the act, the dispositive question is whether the refusal to
> work has ended, not whether the offer of employment is
> still open. In the language used by the Legislature, the
> "period of such refusal" refers to the employee's voluntary
> absence from the work force. The plain meaning of this
> statement is that the employee must end that voluntary
> absence in order to be entitled to the reinstatement of
> benefits.
>
> The initial burden of offering reasonable employment is
> on the employer; after that burden is met, the employee has
> the burden of not unreasonably refusing that employment.
> Similarly, the burden of ending the voluntary removal
> caused by the unreasonable refusal must fall on the
> employee. The majority characterizes the requirement that

> an employee indicate a willingness to return to work as judicial engrafting not required by the statute. However, this requirement is simply common sense. The "period of such refusal" must end for benefits to be reinstated, and it must be possible to determine whether it has ended. Only the employee can end the employee's refusal, and only the employee can demonstrate that it has ended. [*Derr, supra* at 395-397.]

We agree with and adopt Chief Justice BRICKLEY's assessment of the plain language of MCL 418.301(5)(a); MSA 17.237(301)(5)(a). The availability of a particular job is irrelevant to the question whether a disabled worker remains "voluntarily removed" from the work force. Indeed, the statute expressly recognizes that job offers may come from "the previous employer, another employer, or through the Michigan employment security commission." The fact that one particular job disappears says nothing about the employee's decision to withdraw from the work force. The power to end the period of refusal lies solely with the employee, regardless of the circumstances of the particular employer or the job market as a whole. As Chief Justice BRICKLEY noted: "Of course, nothing prevents [an employee] from ending his period of refusal and thereby obtaining the reinstatement of his benefits." *Derr, supra* at 398. Thus, if a disabled employee unreasonably refuses a job initially, but later informs the employer of a desire to reenter the work force, the employee has ended the period of refusal, regardless of whether a suitable job is available.[10]

---

[10] Put differently, even if the disabled employee is unsuccessful in her attempt to find a job, her absence from the work force is no longer "voluntary."

In the present case, it is undisputed that plaintiff voluntarily left his job in April 1987, thus refusing reasonable employment. Plaintiff did not take any action to end the period of refusal until November 1990. Thus, plaintiff was not entitled to benefits from April 1987 until November 1990. Had he still been disabled, plaintiff might have been entitled to reinstatement of benefits in November 1990. However, the magistrate found that plaintiff was no longer disabled as of February 1990, and plaintiff was not entitled to any benefits after that date.[11]

For these stated reasons, plaintiff was not entitled to benefits, and the decision of the WCAC is affirmed.

WEAVER, C.J., and CAVANAGH, KELLY, TAYLOR, CORRIGAN, and MARKMAN, JJ., concurred with YOUNG, J.

---

[11] Our resolution of this case makes it unnecessary for us to address the WCAC's additional alternative holding that plaintiff was not entitled to benefits because he was terminated for "just cause." However, we note that we address and reject that argument in *Russell v Whirlpool Financial Corp*, 461 Mich 579; 608 NW2d 52 (2000), also released today. As explained in *Russell*, the common-law rule that a termination for just cause necessarily results in a permanent forfeiture of benefits has been superseded by statute. Where an employee is terminated for just cause, the employee's eligibility for future benefits is determined by reference to MCL 418.301(5)(d), (e); MSA 17.237(301)(5)(d), (e).