Cavanagh, J.
(dissenting). I disagree with the majority’s conclusion that the relevant provision of the federal Intermodal Surface Transportation Efficiency Act (istea), 49 USC 11506(c)(2)(B)(iv)(III), is unambiguous and that this Court is free to decide that the section does not take into account reciprocity agreements. Rather, I conclude that this provision is ambiguous, and that the Interstate Commerce Com *37 mission (ICC) has permissibly construed it to take into account reciprocity agreements. Under Chevron, USA, Inc v Natural Resources Defense Council, Inc, 467 US 837; 104 S Ct 2778; 81 L Ed 2d 694 (1984), then, this Court should defer to the ice’s interpretation of that provision. I, therefore, would affirm the judgment of the Court of Appeals, and must respectfully dissent.
In this case, the Court is called on to review a federal statute that was administered by the ICC when this case arose.[1] As the majority points out, under the Supreme Court’s decision in Chevron, when a court reviews an agency’s construction of a statute the agency administers, the court faces a two-part inquiry. First, the court must determine whether the statute clearly and unambiguously expresses the legislative intent. If so, it then must give effect to the statute as written. However, if the statute is not clear and unambiguous, the court “does not simply impose its own construction on the statute,” but instead reviews whether the agency has permissibly construed the statute. If it has, the court should defer to the agency’s construction. Chevron at 842-843. As alluded, the ICC, in Single State Insurance Registration, 9 ICC2d 610, 618-619 (1993), construed the statute in question to take into account reciprocity agreements that exempted some interstate carriers from state fees, a conclusion opposite to that reached by the majority.
*38 To determine whether a statute clearly and unambiguously expresses legislative intent, courts begin with the statutory language. If the words of a statute are clear and unambiguous, the court must apply them as written, and no further judicial construction is required or permitted. See, e.g., Tryc v Michigan Veterans’ Facility, 451 Mich 129, 135; 545 NW2d 642 (1996) . However, when there can be reasonable disagreement over a statute’s meaning, see People v Adair, 452 Mich 473, 479; 550 NW2d 505 (1996), or, as others have put it, when a statute is capable of being understood by reasonably well-informed persons in two or more different senses, that statute is ambiguous. See 2A Singer, Statutes & Statutory Construction (6th ed), § 45.02, pp 11-12. For example, this Court has concluded that statutes have been ambiguous when one word in the statute has an unclear meaning, see Perez v Keeler Brass Co, 461 Mich 602, 610; 608 NW2d 45 (2000), when a statute’s interaction with another statute has rendered its meaning unclear, see People v Denio, 454 Mich 691, 699; 564 NW2d 13 (1997) , or when application of the statute to facts has rendered the correct application of the statute uncertain, see Elias Bros v Treasury Dep’t, 452 Mich 144, 150; 549 NW2d 837 (1996).
In this case, the majority concludes that the governing istea provision is plain and unambiguous. In the words of our prior decisions, then, the majority concludes that there cannot be reasonable disagreement over the statute’s meaning, and that reasonably well-informed people cannot understand the statute in two or more different senses. Before amendment, the governing section provided that the ICC, and through it, states
*39 shall establish a fee system for the filing of proof of insurance as provided under subparagraph (A)(ii) of this paragraph that (I) will be based on the number of commercial motor vehicles the carrier operates in a State and on the number of States in which the carrier operates, (II) will minimize the costs of complying with the registration system, and (III) will result in a fee for each participating State that is equal to the fee, not to exceed $10 per vehicle, that such State collected or charged as of November 15, 1991 .... [49 USC 11506(c)(2)(B)(iv).]
I cannot agree that the meaning of this language is clear and unambiguous. Rather, it is subject to reasonable disagreement.
The majority concludes that the fee “collected or charged” refers only to the fee system a state had in place on November 15, 1991, and that this is clear from the plain meaning of § 11506(c)(2)(B)(iv). See ante at 31-32. However, the conclusion that the fee “collected or charged” refers only to the fee system requires that “collected or charged” include the possibility that the fee “charged” can be simultaneously “waived.” Id. at 32. Otherwise, there would be no question that the state had not collected or charged anything from plaintiff until the changes in the reciprocity system became effective in 1992, after the cutoff date provided in § 11506. The conclusion that a fee can be “charged,” yet concurrently “waived,” though, is not consistent with this Court’s approach to plain language.
When construing a statute according to its plain language, unless the statute itself dictates otherwise, this Court generally turns to dictionary definitions of the statutory terms to find those terms’ ordinary and generally accepted meanings. See, e.g., Denio at 699. Applying this approach to the instant case calls the *40 majority’s conclusion that a fee can be simultaneously “charged” and waived into question. “Charge” is defined variably as (1) “To hold financially liable; demand payment from,” (2) “To demand or ask payment,” (3) “A financial burden, as a tax or lien,” (4) “To set or ask (a given amount) as a price,” (5) “Expense; cost,” or (6) “The price set or asked for something.” The American Heritage Dictionary (2d College ed, 1982).
The problem in this case is that the ordinary and generally accepted meanings of the term “charge” do not dictate the majority’s conclusion. Rather, the definitions of “charge” present a spectrum of concepts ranging from those that might encompass the majority understanding that a fee can be “charged” but concurrently “waived” — definitions 4, 6, and arguably 5— to those that do not encompass that understanding because they require that the charge be a “demand” or a “burden.” Definitions 1, 2, and 3 do not support the majority’s conclusion because, under those meanings of “charge,” the state would have to waive a fee, yet also hold a carrier financially liable for it, or demand or ask for payment of a fee that had been waived. Similarly, if a fee has been “waived,” it is not a financial burden on the party responsible for the fee. In this case, plaintiff was not made financially liable for, or financially burdened with, the waived fee, and the state did not demand the waived fee before November 15, 1991. Thus, although several accepted definitions of “charge” support the majority conclusion, several others weigh against it.
As mentioned above, the meaning of a facially unambiguous term can be ambiguous in certain circumstances. See Denio at 699; Perez at 610. Thus, *41 although “charged” may not at first blush appear ambiguous, in the context of a fee that was established in a fee system, but never demanded because of a reciprocity agreement, “charged” is ambiguous because the fee may or may not fit the definition of a fee that is “charged.” If the statutory term “charged” is narrow and requires a demand for payment, the state had not charged plaintiff the fees before November 15, 1991, and cannot charge plaintiff for later years. On the other hand, if “charged” is broad and requires only the setting of a fee, the state had charged the fee by the cutoff date, and plaintiff cannot avoid payment. Compare Perez at 610 (“refuses” could have a broa.d or narrow meaning).
Although it does so without explanation, the majority chooses the latter meaning, concluding that even when the fee was waived for particular carriers, it still had been charged in general. Ante at 32. I do not contend that the majority has chosen the wrong definition of “charge,” or that its conclusion about § 11506’s meaning is unreasonable. However, for the majority to come to its conclusion, it had to resolve the ambiguity surrounding the meaning of the statutory term “charged,” specifically, whether “charged” was used in its broad or narrow sense.[2] Normally, this *42 Court has a duty to make such a decision. In this case, however, the different possible meanings of “charged” present an ambiguity in § 11506. Under Chevron, rather than this Court imposing its own construction on the statute, we must consider whether the ICC, the agency responsible for administering this statute and which has already resolved this ambiguity in § 11506, did so permissibly.
I conclude that the ICC did permissibly construe the statute, and, therefore, I would defer to that agency. In Single State, the ICC considered whether the freeze on registration fees enacted through the istea should take reciprocity agreements into account. It decided that the istea does take reciprocity agreements into account when freezing the fees that states “charged.” Thus, an interstate carrier that was not charged any fees before November 15, 1991, because it was operating under a reciprocity agreement, could not be charged fees after that time. See Single State, supra at 617-619. This interpretation evidences that the ICC preferred the narrow approach to “charged,” concluding that an interstate carrier had not been “charged” a registration fee unless a state had made a demand for the fee, or unless the carrier had been held financially liable for the fee. Under reciprocity agreements, states did not make demands for fees, and did not hold carriers hable for fees. Hence, carriers operating under those agreements were not “charged” before the cutoff date, and could not be charged after it. *43 Though this Court may not prefer the ice’s inteipretation of § 11506 or the narrow approach to the term “charged,” in light of the different possible meanings of the statute, the ICC approach is certainly a permissible construction. I would, therefore, defer to that agency’s interpretation of this section.
In sum, I disagree with the majority’s conclusion that 49 USC 11506 is not reasonably subject to different understandings. Whether the statutory term “charged” is understood narrowly or broadly affects this statute’s meaning. Because the statute can be understood differently, this Court’s only role is to consider whether the federal agency responsible for administering this statute, which has already considered the question before this Court, permissibly answered that question. The ICC took a narrow view of the meaning of “charged,” but nevertheless a view that is supported by § 11506. I would defer to that agency’s view and, therefore, must respectfully dissent.

 The ICC was abolished in 1996, and the references to the ICC in the governing statute, which was recodified, were changed to refer to the Secretary of Transportation. See 49 USC 14505; see also PL 104-88, 109 Stat 803, tit I, § 103.

 To conclude that the fee “charged” refers only to the fee set by the fee system, the majority must nevertheless conclude that “charged” is broad, meaning only that the state “set a price” for carriers but did not hold a carrier liable for that price. Such an understanding comports only with definitions 4 and 6 above, but not the narrower meaning of “charge” in definitions 1, 2, and 3. Otherwise, the fee “charged” could refer to only a particular fee and not the system itself.
Further, if the majority is correct that the fee charged refers only to the fee system in place, but not the fees charged of particular carriers, then apparently Michigan could waive fees for every carrier operating in the state, under reciprocity agreements or not, but nevertheless continue to *42 be said to “charge” a generic fee. In such a scenario, the majority would apparently conclude that Michigan “charged” a fee even though it held no carrier financially liable for any fee.
Again, there is room for reasonable disagreement over the proper understanding of these statutory terms. That room for disagreement, though, indicates that we should defer to the icc understanding.